33517. REID et al. v. ADAMS et al.
33693. REID et al. v. REID et al.

HILL, Justice.

This is a child custody action involving two minor children, ages 3 and 5. At various stages in the litigation, custody has been sought by the paternal grandparents,

the maternal grandparents and the children's mother. The courts of both North Carolina and Georgia have dealt with the custody dispute while these young children have been kidnapped twice from one state to the other.[1]

The paternal grandparents now appeal from the denial of their habeas corpus petition in which they sought to regain custody under an earlier North Carolina child custody order. They also appeal from the custody award to the mother in a divorce action in which both sets of grandparents intervened. All parties agreed that the testimony and evidence introduced in the habeas corpus hearing would be the basis of the custody award in the divorce action. Accordingly, these appeals have been consolidated.

The paternal grandparents are residents of North Carolina. The maternal grandparents are residents of Georgia. In the summer of 1976, the parents were stopped by police while driving in North Carolina and the father was arrested for possession of twenty-three pounds of marijuana. Following his conviction and imprisonment, the mother moved with the children to the paternal grandparents' home in North Carolina. A dispute developed between the paternal grandparents and the mother over the mother's involvement with a male friend in Georgia. This culminated August 24, 1976, with the mother leaving the paternal grandparents' home and going to the maternal grandparents' home in Georgia. The mother left the children with the paternal grandparents in North Carolina after she was threatened with loss of her children due to her misbehavior with her friend in Georgia.

The following week, the mother, accompanied by the

---

[1]The trial court correctly noted: "There has been much bitterness exhibited between the maternal and paternal grandparents and between the mother and the paternal grandparents. It is a shame that these children have been pulled back and forth figuratively, and literally kidnapped back and forth. Children too often are called upon to act like adults while adults act like children. Surely, there is enough love to go around."

maternal grandmother, returned to North Carolina, retained an attorney and on August 30, 1976, filed a complaint in the General Court of Justice, Forsyth County, North Carolina, seeking to gain custody of the children from the paternal grandparents. The complaint recited that the mother was a North Carolina resident, that she had informed the paternal grandparents of her intention to move to Georgia with her children and that the paternal grandparents were withholding custody of the children from her. As part of her complaint, the mother sought temporary custody pending a final hearing to establish permanent custody. An ex parte order was entered the same day granting the mother temporary custody and setting the permanent custody hearing for September 28, 1976. The mother immediately took custody of the children from the paternal grandparents pursuant to the ex parte order and returned to Georgia.

The maternal grandfather testified that he consulted his attorney to inquire if the attorney would represent the mother in a divorce action. The maternal grandfather discussed with the attorney, who was also the Floyd County Juvenile Judge, the pending final hearing in North Carolina. The paternal grandfather testified: "I knew this other hearing was coming up. So I frankly didn't know what to do, but he said, until this thing is settled, just to consider the children wards of the court placed in our custody. And if there was any question about the children to refer it on to him."

The mother, accompanied by the maternal grandfather, returned to North Carolina for the September 28 custody hearing. The children remained in Georgia. At the conclusion of that hearing, the court announced its decision and the mother and maternal grandfather left immediately for Georgia. The order, entered September 29, 1976, found both the mother and the father (he was present at the hearing but not a party) unfit parents. The mother was found to be unfit due to her use of drugs and infidelity. The order placed custody of the children in the paternal grandparents and directed the mother to deliver the children to the paternal grandparents "at the earliest possible time." At the request of the mother's North Carolina attorney, the court

also ordered that the homes of the maternal grandmother and the paternal grandparents be investigated to determine if the homes were adequate for the raising of minor children. The mother gave notice of appeal in open court but did not pursue it insofar as this record shows.

The maternal grandather testified that on September 29, 1976, he again consulted the same attorney at his law office, that he informed him of the North Carolina order and that the attorney advised him that he should file a petition alleging that the children were deprived. According to the maternal grandfather the petition was prepared in the attorney's office and the mother signed a verified answer admitting that the children were deprived. The record does not show that the parties appeared in juvenile court. The complaint and answer were filed in the Floyd County juvenile court September 29, 1976. An order was entered the following day finding that the children were deprived and taking custody of the children into the juvenile court but placing them in the care of the maternal grandparents with visitation rights to the mother.

In December, 1976, the paternal grandfather, accompanied by a private detective, took possession of the children from their nursery school and went back to North Carolina. Seven months later, the mother took possession of the children from the paternal grandmother by threatening to use a gun.

After establishing residence, the mother filed suit August 4, 1977, in Floyd Superior Court seeking a no-fault divorce and custody of the children. The husband was served by publication. Both sets of grandparents were permitted to intervene and both sought custody of the children. The paternal grandparents filed this habeas corpus action November 1, 1977, against the maternal grandparents and the mother seeking to regain custody under the September 30, 1976, North Carolina custody order. The maternal grandfather filed a counterclaim for custody. The mother was granted a divorce and the child custody issue in the divorce case was reserved for decision in the habeas case.

The habeas petition was based on the paternal grandparents' claim of custody under the North Carolina

order as opposed to the maternal grandparents' claim of custody under the subsequent Georgia juvenile court order. The habeas court determined that the North Carolina order was a temporary order and not entitled to full faith and credit; that the juvenile court order was valid, and that even if the juvenile court order were invalid, the court could determine custody under the maternal grandfather's counterclaim for custody. The court held that the juvenile court order gave legal custody to the maternal grandparents and denied the habeas petition. In the divorce action, the court awarded permanent custody to the mother finding no evidence of present unfitness.

1. Without considering the mother's taking the children from the paternal grandmother by threatening to use a gun, the mother's refusal to comply with the North Carolina order and her participation with the maternal grandfather in the filing of a juvenile court petition is, under the facts of this case, the equivalent of child snatching. She sought custody in the North Carolina court and lost. Her father then sought to have that decision set aside by the Floyd County juvenile court. This was an attempt to utilize the legal process to circumvent the award of child custody to the paternal grandparents previously litigated and not appealed by the mother in North Carolina. Georgia courts will not permit legal custody of children to be so relitigated by seeking a different forum. See *Matthews v. Matthews,* 238 Ga. 201 (232 SE2d 76) (1977). The allegation in the petition that the children were "deprived" within the meaning of the Juvenile Court Act cannot change the essential nature of the action from what it is — a child custody contest (*Griggs v. Griggs,* 233 Ga. 752 (213 SE2d 649) (1975)), but without the paternal grandparents.

The juvenile court petition was based upon the allegation that the parents were unable to care for the children. It did not allege that the legal custodians of the children were unable to care for them and it failed to list the names and addresses of those custodians as required by Code Ann. § 24A-1603 although it is clear from the record that the North Carolina award of legal custody to the paternal grandparents was known to all parties. We

concluded that, because the custodial paternal grandparents were not given notice or opportunity to be heard, the juvenile court order conferred no right of custody in the maternal grandparents. It therefore was error to deny the paternal grandparents' habeas petition in favor of the juvenile court award.

The habeas court held, however, that even if the juvenile court order were invalid, the habeas court has jurisdiction to determine custody under the counterclaim by the maternal grandfather. A nonresident legal custodian should not be forced to relitigate questions of custody in the jurisdiction where the physical custodian is wrongfully holding a child when the legal custodian seeks to enforce his rights in habeas corpus. *Matthews v. Matthews,* supra; *Woods v. Woods,* 238 Ga. 737 (235 SE2d 36) (1977); *Meek v. Baillargeon,* 239 Ga. 137 (236 SE2d 81) (1977); *Bayard v. Willis,* 241 Ga. 459 (1978). The trial court erred in denying the paternal grandparents relief in habeas court.

2. The primary relief sought in the no-fault divorce action related to the custody issue. As we held above, the juvenile court order vested no legal custody rights. If the court in the divorce action could award custody, it was founded solely upon the mother's residence in Floyd County and the physical presence of the children in Georgia contrary to the North Carolina order. "Every state has the right to determine the marital status of its citizens, and the right to make such decision draws to it the right to dispose of all ancillary matters, such as the custody and support of children when the marital relation of the parents is dissolved." *Milner v. Gatlin,* 139 Ga. 109, 112 (76 SE 860) (1912). Under the facts of this case, however, the custody issue was not ancillary to the complaint for divorce (see *Hicks v. Hicks,* 193 Ga. 446 (18 SE2d 754) (1942)), but was in the nature of a petition for change in custody. The children were present in this state only by virtue of the mother's conduct in refusing to comply with the North Carolina order. The mother filed the North Carolina complaint; she cannot now complain of its effect. See *Turner v. McGee,* 217 Ga. 769, 772 (125 SE2d 36) (1962); *Dance v. Smith,* 223 Ga. 328 (1) (155 SE2d 10) (1967); *Durham v. Spence,* 228 Ga. 525, 528 (186

SE2d 723) (1972).

Custody of these minor children cannot be redetermined through the present divorce proceeding brought by the mother. Neither the physical presence of the children in Georgia under the facts of this case, nor the intervention of the maternal grandparents who we have determined have no valid custody award, would give the court the discretion to redetermine custody. *German v. Johnson,* 231 Ga. 454 (2) (202 SE2d 89) (1973).

The legal custodians of these children reside in North Carolina. In addition to seeking habeas corpus, they intervened in this divorce action relying on the prior North Carolina order. A wrongdoer should not be permitted by her wrongdoing to choose her forum to relitigate the issue of custody. As a matter of public policy, we will not allow this mother, a noncustodial parent, to seek custody here while withholding these children in defiance of the North Carolina order. "It is thus in the public interest to discourage such conduct without any prejudice whatsoever to the noncustodial parent's right to bring such a petition where the legal custodian, and the children, reside." *Matthews v. Matthews,* supra, 238 Ga. at 203.

The Uniform Child Custody Jurisdiction Act, to become effective January 1, 1979, contains a similar policy. Code Ann. § 74-509 will provide: "Jurisdiction declined by reason of conduct. (a) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

"(b) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

*Judgment reversed as to both cases. All the Justices concur.*

CASE NO. 33517 SUBMITTED APRIL 28, 1978; CASE NO. 33693 SUBMITTED JUNE 2, 1978 — DECIDED JULY 6, 1978.

*Covington, Kilpatrick & Storey, William D. Covington,* for appellants.

*Smith, Shaw, Maddox, Davidson & Graham, Groze Murphy, Jr., Kenneth C. Fuller,* for appellees.