## A11A1948. DELGADO v. COMBS.
(724 SE2d 436)

DILLARD, Judge.

Elizabeth Delgado appeals from the Superior Court of Columbia County's order granting sole legal and physical custody of her minor daughter, A. C., to the child's father, Craig Combs, and denying Delgado visitation except as approved by Combs, thereby modifying an initial custody determination made by a court in Kansas. In

---

[40] OCGA § 32-2-2 (a) (1).

[41] *Williams*, supra.

[42] OCGA § 50-21-23 (a).

420

several enumerations of error, Delgado contends that the trial court erred in its exercise of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] For the reasons set forth infra, we reverse the trial court's order modifying custody of the parties' daughter because the Georgia court lacked subject-matter jurisdiction.

The record reflects that on December 4, 2008, the District Court of Reno County, Kansas, issued an order approving a custody agreement between Delgado and Combs, in which the parties would share "joint care, custody, and control" of A. C., and Delgado would serve as her residential custodian except during defined visitation periods with Combs. Thereafter, on May 26, 2009, the same court entered an order transferring physical custody to Combs for the 2009-2010 school year, at which point Combs had relocated from Kansas to Georgia. This order further set forth a visitation schedule between Delgado and A. C. for the remainder of 2009 and 2010, and provided that the parties could agree to the child remaining with Combs in Georgia for the 2010-2011 school year.

On November 4, 2010, Combs filed an Emergency Petition to Modify Custody and Visitation in the Superior Court of Columbia County, Georgia, seeking to invoke the court's jurisdiction pursuant to OCGA § 19-9-64 "to make a temporary emergency order to protect [A. C.] from being subjected to or threatened with mistreatment or abuse." The petition admitted that an initial custody determination had been made in Kansas. It further alleged that Delgado's last known address was in Hutchinson, Kansas, and that she had neither maintained contact with Combs and A. C. concerning her where-abouts nor exercised visitation with A. C. to the extent allowed by the Kansas order. The petition further alleged that Delgado was "believed to be using illegal substances, specifically methamphet-amine." Thus, Combs sought an award of sole legal and physical custody of A. C. and a temporary stay of Delgado's visitation privileges "until such time as she demonstrates that she can main-tain a stable residence and remain drug-free for a period of sixty (60) days."

On this same day, Combs filed a Motion for Service by Publica-tion, which also alleged that Delgado had made her whereabouts unknown, that she was believed to be "living a transient lifestyle in which she does not have a permanent address but moves from location to location in search of illegal drugs," and that service could only be perfected by publication. Attached to the motion was an affidavit by Combs, in which he averred Delgado's last known

---

[1] OCGA § 19-9-40 et seq.

address to be in Hutchinson, Kansas; that he did not know her current place of residence; that he had "exercised due diligence, including calling known relatives and friends and searching on the internet to locate [Delgado]" but had been unsuccessful; and that Delgado was not residing in Georgia.

The trial court granted Combs's motion for service by publication, and the clerk of court then sent a copy of the notice, order, and complaint by certified mail to what Combs claimed was Delgado's last known address in Hutchinson, Kansas.[2] On December 15, 2010, an affidavit of publication was filed with the court, showing that notice regarding the emergency petition had been published in a newspaper of general circulation in Columbia County, Georgia, on November 21 and 28 and on December 5 and 12.

The trial court conducted an emergency ex parte hearing on November 12, 2010 (before notice had even been published), at which point Combs's attorney informed the court as follows:

> Last week, Mr. Combs was called by the defendant and she has now informed him of her address. That is in Kansas. Now, that creates an issue, as far as jurisdiction is concerned, but it also — for purposes of service of the complaint, what we have done is we have gone ahead and sent — sent it up for personal service to Kansas to her county to the sheriff up there. That was sent up Tuesday of this week, so we're attempting to serve her both personally and by publication now.

The trial court then indicated its intent to invoke emergency jurisdiction pursuant to OCGA § 19-9-64, but acknowledged that unless the court in Kansas "relinquishes it's [sic] continuing jurisdiction, then it is a superior jurisdiction over this one, as long as either one of you or the child resides in Kansas."

Nevertheless, following this hearing, the trial court entered an Emergency Ex Parte Order on December 7 and found that despite the initial custody determination by Kansas, jurisdiction and venue were proper in Georgia pursuant to OCGA § 19-9-64's emergency jurisdiction.[3] The court further found that it was appropriate to grant the requested emergency relief and ordered that primary

---

[2] We note that although the items were returned as undeliverable, the return-to-sender sticker reflected that Delgado had a new address in Hutchinson, Kansas.

[3] OCGA § 19-9-64 (a) permits a Georgia court to exercise "temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or a parent of the child is subjected to or threatened with mistreatment or abuse." When an initial child custody determination has been made by a different state, OCGA § 19-9-64 (c) and (d) set forth

physical custody of A. C. remain with Combs and visitation with Delgado be stayed until the court could issue a further order.[4]

Thereafter, on January 7, 2011, a sheriff's entry of service was filed with the trial court, which showed that on November 17, 2010, personal service was attempted at the Hutchinson, Kansas address that Combs admitted Delgado had provided. The return of service reflected that "diligent search" was made for Delgado at that address but that she was "not to be found in the jurisdiction . . . ."[5]

Finally, after holding a 30-day conference hearing on January 6, the trial court entered an order 20 days later, finding that personal service upon Delgado had been attempted but had failed and that service was made by publication. The court further found that Delgado had purposefully evaded service and that "such conduct should not and will not frustrate the jurisdiction of this [c]ourt." Thus, the court determined that it had temporary emergency jurisdiction pursuant to OCGA § 19-9-64 (a) and jurisdiction to permanently modify the prior custody determination by Kansas pursuant to OCGA § 19-9-63.

In this regard, the trial court found that A. C. had been a resident of Georgia for at least 18 months and that neither parent resided in Kansas. The court further held that Delgado was in default for failing to file an answer, and accordingly, the court deemed the allegations of Combs's emergency petition as admitted—i.e., that Delgado was using illegal drugs and had failed to maintain contact with A. C. The court ultimately modified Kansas's initial custody determination by placing sole legal and physical custody of A. C. with Combs and limiting visitation with Delgado to only that approved by Combs.

On February 16, 2011, Delgado filed a Motion to Set Aside Judgment, in which she contended that she did not receive notice of the trial court's proceedings. She argued that the final order should be set aside due to insufficient service, lack of personal jurisdiction, and lack of subject-matter jurisdiction. Additionally, the motion alleged that Delgado had informed Combs of her address on October 10, 2010, and that Combs could have obtained her whereabouts if he

---

additional requirements for the exercise of temporary emergency jurisdiction by a Georgia court. *See* OCGA § 19-9-64 (c) (mandating that the order specify "a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction"); OCGA § 19-9-64 (d) (mandating that upon being informed of a prior custody determination by another state, the Georgia court "shall immediately communicate with the other court").

[4] We note that the certificate of service on this order reflects that it was mailed to Delgado at yet another address in Hutchinson, Kansas.

[5] The record reflects this as being the only attempt to personally serve Delgado at this address.

had actually questioned her friends and family. Delgado further detailed numerous instances of contact between Combs, Delgado, and their families during the pendency of the proceedings and asserted that Combs never indicated that he was searching for Delgado.[6] Thus, Delgado argued that the trial court had permitted notice by publication based on a false affidavit by Combs.

Additionally, Delgado argued and averred that she resided at the address where personal service was attempted but that she lived in a trailer located at the back of the property. And although a card left at a house on the property in November 2010 advised Delgado that there were documents to pick up at the local courthouse, according to Delgado, the card did not specify the type of documents or what they concerned.

In response to Delgado's motion to set aside judgment, Combs filed a second affidavit, in which he averred to having only one Kansas address for Delgado and that her mother had informed him in October 2010 that she was unsure of Delgado's whereabouts. He further averred that he spoke to Delgado on November 3, 2010; learned of her new Kansas address on November 5; and attempted to personally serve her thereafter. Finally, he averred to speaking with Delgado in December 2010 and said that she questioned him then as to the court's emergency ex parte order, which she had apparently received.

A hearing was held to address Delgado's motion on February 25, at which point the trial court rejected each of her arguments and opined that in addition to its initial jurisdictional findings, Georgia was also a more convenient forum. And on March 24, 2011, the court entered a second amended final order[7] to add its finding that Georgia "was a more convenient forum than Kansas in which to litigate the issue of modification" of the prior Kansas order. That same day, the court issued an order denying Delgado's motion to set aside judgment and her request for attorney fees.

Finally, the record reflects that on March 30, 2011, the court in Kansas contacted the court in Georgia "to determine which state has jurisdiction over [A. C.] under the [UCCJEA]." During that communication, the parties were represented by attorneys in Georgia and attorneys in Kansas. The court in Kansas thereafter found that it had continuing, exclusive jurisdiction over the child custody issue between the parties pursuant to that state's enactment of the

---

[6] These allegations were supported by affidavits from Delgado, her mother, and her mother's boyfriend.

[7] The order was first amended in February 2011 to correct a clerical error which had stated that Delgado was served by publication in a newspaper of general circulation in Kansas when, in fact, publication was made in a Georgia newspaper.

UCCJEA,[8] and questioned the Georgia court's exercise of emergency jurisdiction and service of process. Ultimately, the Kansas court concluded that it "does not believe the Georgia court has jurisdiction under the [UCCJEA]," but nevertheless recognized that the Georgia court had stated that it "was not deviating from [the] Second Amended Order filed on March 24, 2011." Thus, because the court in Kansas disagreed with the Georgia court and "believe[d] it retain[ed] exclusive continuing jurisdiction," the Kansas court directed that, "while not in anyway [sic] deferring to Georgia or conceding the jurisdiction issue," further proceedings would be stayed in that court pending this Court's review of the case. This appeal follows.[9]

Delgado argues that the trial court erred by (1) finding that it had subject-matter jurisdiction under the UCCJEA, (2) failing to specify a time limit in which Combs could obtain an order from the court in Kansas when the Georgia court exerted temporary emergency jurisdiction, (3) failing to communicate with the court in Kansas, (4) finding that it had personal jurisdiction over Delgado, (5) allowing service by publication, (6) finding that Delgado purposefully evaded service, and (7) denying her motion for attorney fees. In response, Combs concedes that enumerations of error (2) and (3) are correct but argues that they are moot because the court's final order is permanent, not temporary.

At the outset, it is important to note that the National Conference of Commissioners on Uniform State Laws

> promulgated the UCCJEA in 1997 to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties [when] multiple states are involved.[10]

Indeed, the UCCJEA has been called "a pact among states limiting the circumstances under which one court may modify the orders of another."[11] And Georgia adopted its version of the UCCJEA in 2001,

---

[8] *See Kan. Stat. Ann. § 23-37,202 (codified at that time at Kan. Stat. Ann. § 38-1349).

[9] We granted Delgado's application for discretionary appeal on May 12, 2011.

[10] *Friedman v. Eighth Judicial District Court of the State*, 264 P3d 1161, 1165 (II) (A) (Nev. 2011) (punctuation omitted). *See generally* UCCJEA § 101 cmt. (stating that the purposes of the act are to (1) avoid jurisdictional competition, (2) promote cooperation between courts of different states, (3) discourage use of the interstate system to continue custodial controversies, (4) deter child abductions, (5) avoid relitigation of custody decisions in other states, and (6) facilitate enforcement of decrees by other states).

[11] *In re Custody of A. C.*, 200 P3d 689, 691 (Wash. 2009).

replacing our state's prior child custody act,

> because, in application, imprecision in the prior act's language often allowed for the existence of concurrent jurisdiction over custody matters in multiple states, thereby fostering competition among jurisdictions and forum shopping by the parties. The UCCJEA . . . remedies these earlier unintended problems by establishing continuing jurisdiction in the state in which the original custody decree was entered.[12]

Kansas, too, has adopted the UCCJEA,[13] and the versions adopted by Kansas and Georgia contain similar—if not identical—provisions.[14]

In applying and construing the provisions of the UCCJEA as codified in Georgia, we must consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it."[15] In accord with this mandate—and given the relative dearth of Georgia law on this subject—we will look to the cases of other jurisdictions when appropriate to resolve the issues in the case sub judice.

With these guiding principles in mind, we turn now to Delgado's enumerations of error.

1. Delgado first argues that the trial court erred in finding it had subject-matter jurisdiction under the UCCJEA. We agree.

To begin with, we agree with Combs that because the trial court's final order permanently modifies the custody arrangement between the parties, any arguments regarding temporary emergency jurisdiction are moot because the court could not use temporary emergency jurisdiction to take the action that it did.[16] Thus, the question before this Court is whether the trial court lacked subject-matter jurisdiction to permanently modify the Kansas court's order.[17] And whether a trial court lacked subject-matter jurisdiction is

---

[12] *Hall v. Wellborn*, 295 Ga. App. 884, 885 (673 SE2d 341) (2009) (punctuation omitted).

[13] *See* Kan. Stat. Ann. § 23-37,101 et seq. (previously codified at Kan. Stat. Ann. § 38-1336 et seq.).

[14] *Compare* OCGA § 19-9-40 et seq., *with* Kan. Stat. Ann. § 23-37,101 et seq. (previously codified at Kan Stat. Ann. § 38-1336 et seq.).

[15] OCGA § 19-9-101.

[16] *See* OCGA § 19-9-64.

[17] Appellate courts in other states have recognized that
the UCCJEA might have more accurately used the term "exclusive venue" instead of "subject matter jurisdiction," [because] subject matter jurisdiction concerns the type of controversy, not the facts of an individual case, and normally does not arise by virtue of one court declining jurisdiction in favor of another otherwise not empowered to exercise it.

"an issue of law that we review de novo for plain legal error."[18]

In facing a similar question to that before us, i.e., whether a court of its state properly exercised jurisdiction to modify the custody determination made by another state, the Supreme Court of Colorado recently held that

> [b]ecause, under the UCCJEA, a new state may not modify an out-of-state child custody order unless it properly finds that the issuing state has been divested of jurisdiction (or declined to exercise it), the parent petitioning the new state to assume jurisdiction bears the burden of proving, not only that the new state would have jurisdiction to enter an initial child custody order, but that the issuing state has lost or declined to exercise jurisdiction as well.[19]

We find this to be a reasonable burden to place upon such a petitioner.[20] In that regard, OCGA § 19-9-63 provides that, except as allowed by the temporary emergency jurisdiction provision of the UCCJEA,[21] a Georgia court may *not* modify a child-custody determination made by a court in another state *unless*

> a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 *and* . . . [t]he court of the other state determines it no longer has exclusive, continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; *or* . . . [a] court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.[22]

As to this first requirement, a Georgia court has jurisdiction to make an initial custody determination under the relevant portion of

---

*Friedman*, 264 P3d at 1166 (II) (B) n.5 (punctuation omitted); *see also In re Custody of A. C.*, 200 P3d at 691 n.3. Nevertheless, we, like those courts, will use the statutory language of subject-matter jurisdiction. *See Friedman*, 264 P3d at 1166 (II) (B) n.5; *In re Custody of A. C.*, 200 P3d at 691 n.3.

[18] *MacBeth v. State*, 304 Ga. App. 466, 466 (696 SE2d 435) (2010).

[19] *Brandt v. Brandt*, 268 P3d 406, 413 (II) (B) (4) (¶ 33) (Colo. 2012).

[20] *Cf. Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 590 (1) (690 SE2d 397) (2010) ("As the party seeking a divorce, Wife had to show that the trial court has jurisdiction over the res of the marriage which results from his or her domicile in this state for the six-month period preceding the filing of the action." (punctuation omitted)).

[21] *See supra* note 3.

[22] OCGA § 19-9-63 (emphasis supplied).

OCGA § 19-9-61 if Georgia is the child's home state on the date the proceeding is commenced or if Georgia was the child's home state within six months before the proceeding commenced and a parent or person acting as a parent continues to live in Georgia.[23] Additionally, a court in another state must not have jurisdiction by reason of being the child's home state *or* the court in the child's home must have declined to exercise jurisdiction on the ground that Georgia is the more appropriate forum.[24] Finally, the child and his or her parents, or the child and at least one parent or person acting as a parent, must have a significant connection with Georgia other than mere physical presence; and there must be substantial evidence available in Georgia "concerning the child's care, protection, training, and personal relationships."[25]

And here, it is undisputed that Georgia satisfied the relevant "home state" requirements of OCGA § 19-9-61 (a). Nevertheless, Georgia failed to satisfy the remaining requirements of OCGA § 19-9-63.

First, Combs readily admitted before the trial court that the District Court of Reno County, Kansas, made an initial custody determination, and Kansas never determined that it no longer had exclusive, continuing jurisdiction.[26] Additionally, although the Georgia court determined that it provided a more convenient forum than Kansas, OCGA § 19-9-63 (1) specifies that the out-of-state court must make this determination, *not* Georgia,[27] and Kansas has never made such a determination. Accordingly, in the absence of a determination by the District Court of Reno County, Kansas, that it no longer had continuing, exclusive jurisdiction *or* that Georgia would be a more convenient forum, Georgia could only have subject-matter jurisdiction to modify the Kansas order if either a Georgia court or the court in Kansas determined that "neither the child nor the child's parents or any person acting as a parent presently resides in [Kansas]."[28] And here, although the Georgia court determined that neither A. C. nor her parents were presently residing in Kansas, it

---

[23] OCGA § 19-9-61 (a) (1).

[24] OCGA § 19-9-61 (a) (2).

[25] OCGA § 19-9-61 (a) (2) (A)-(B).

[26] *See* OCGA § 19-9-63 (1).

[27] *See id.* ("[A] court of [Georgia] may not modify a child custody determination made by a court of another state unless . . . [t]he *court of the other state* determines it no longer has exclusive, continuing jurisdiction . . . *or* that a court of [Georgia] would be a more convenient forum . . . ." (emphasis supplied)).

[28] *See* OCGA § 19-9-63 (2) ("[A] court of [Georgia] may not modify a child custody determination made by a court of another state unless . . . [a] court of [Georgia] or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.").

erred in doing so.

On the record before us—and on the state of the record before the trial court when its determination was made—Combs presented no evidence to support a finding that Delgado was not residing in Kansas. When the court entered its final order, the only evidence before it consisted of affidavits from Combs and his attorney in support of a motion for service of process by publication. And although Combs alleged in that motion, his supporting affidavit, and his emergency petition that Delgado's whereabouts were unknown, he *never* alleged that she no longer resided in Kansas. Instead, he averred that her last known address was in Kansas, and personal service and service by certified mail were thereafter attempted in Kansas. Additionally, Combs's attorney informed the court at the ex parte hearing that Delgado had informed Combs of her most current address, which was in Kansas.

Thus, when the court entered its final order and found that Delgado no longer resided in Kansas, there was a complete lack of evidence—let alone any allegation—to support same.[29] Accordingly, the trial court erred in determining that Delgado no longer resided in Kansas,[30] and the court lacked subject-matter jurisdiction to permanently modify the initial custody order entered in Kansas and erred in denying Delgado's motion to set aside judgment.[31] And because Kansas retains exclusive, continuing jurisdiction in this matter, we reverse the trial court's order modifying the custody determination by that state.[32]

---

[29] *Compare Hall*, 295 Ga. App. at 885 (holding that Georgia lost exclusive, continuing jurisdiction to Florida when record showed, *inter alia*, that "both parents admitted in the Florida action that they and the child resided in Florida"); *Russell v. Cox*, 678 SE2d 460, 462-63 (S.C. Ct. App. 2009) (holding that South Carolina court, notwithstanding evidence that father and mother both resided in South Carolina, properly found that there was evidence that father was also a resident of Georgia, the state that issued initial custody decree, and court properly declined to exercise jurisdiction); *In the Interest of P. F. B.*, 191 P3d 49, 52-53 (I) (Utah Ct. App. 2008) (trial court did not make formal findings of fact on issue but there was no assertion that any parent continued to reside in state that initially entered order, no facts appeared on record that would destroy jurisdiction, *and* parent whose whereabouts were unknown was last known to be outside of state that initially entered order).

[30] *See State of Ga. v. Mozley*, 182 Ga. App. 871, 874 (357 SE2d 313) (1987) (trial court's findings of fact must be reversed as clearly erroneous when there is no evidence to support the findings); *see also Brandt*, 268 P3d at 410 (II) (¶ 16) ("The party asserting that the issuing state has lost exclusive continuing jurisdiction bears the burden of proof.").

[31] *See Ferrara v. Neill*, 165 SW3d 539, 544 (Mo. Ct. App. 2005) (holding that Missouri lacked authority to modify New Mexico custody decree when, *inter alia*, mother continued to reside in New Mexico).

[32] *See In the Interest of A. D. B.*, 232 Ga. App. 697, 698 (503 SE2d 596) (1998) ("When a trial court enters a judgment where it does not have jurisdiction, such judgment is a mere nullity; but an appeal from such an illegal judgment will not be dismissed but instead, the void judgment will be reversed." (punctuation omitted)). *Accord Darden v. Ravan*, 232 Ga. 756, 758 (1) (208 SE2d 846) (1974).

2. Given our holding in Division 1, and with the exception of Delgado's enumeration of error regarding the trial court's denial of her requested attorney fees, we need not address Delgado's remaining enumerations. With regard to the contention that the trial court erred in denying her attorney fees, we hold that it did not.

Delgado requested attorney fees pursuant to OCGA § 19-9-68 and OCGA § 19-9-92 under the UCCJEA and filed an affidavit in support of same without objection. The trial court denied both requests.[33] Delgado contends that this was in error and that she is entitled to fees under both sections. We disagree.

OCGA § 19-9-68 provides that if a Georgia court declines to exercise its jurisdiction because a person seeking to invoke jurisdiction has engaged in unjustifiable conduct, the court

> shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate.[34]

Delgado argues that she was entitled to fees under this statutory provision because Combs's "conduct was unjustifiable and the court should have declined to exercise jurisdiction and dismiss his petition." Although we agree that the trial court should have declined to exercise jurisdiction (because there was no evidence—or allegation—to support its finding that Delgado no longer resided in Kansas), we disagree with Delgado that the court should have done so pursuant to OCGA § 19-9-68, and thus, we do not order an award of attorney fees.

First, the plain meaning of OCGA § 19-9-68 evinces that its intended focus concerns the requirements for subject-matter jurisdiction, specifically as it concerns the whereabouts of the child.[35] Indeed, subsection (a) of this statutory provision makes clear that if a person has engaged in unjustifiable conduct to invoke jurisdiction, the trial court must decline to exercise that jurisdiction *unless* (1) the child's parents or persons acting as parents agree to the exercise of jurisdiction, (2) a court in a state that otherwise has jurisdiction

---

[33] Delgado also sought an award of attorney fees under OCGA § 13-6-11, but she only appeals the denial of her request under OCGA § 19-9-68 and OCGA § 19-9-92. Accordingly, we do not address the court's denial of her request pursuant to OCGA § 13-6-11.

[34] OCGA § 19-9-68 (c).

[35] *See* OCGA § 19-9-68 (a)-(b).

under OCGA § 19-9-61 through OCGA § 19-9-63 determines that Georgia is a more appropriate forum, or (3) no court of any other state would have jurisdiction under OCGA § 19-9-61 through OCGA § 19-9-63.[36] Additionally, subsection (b) provides that if a Georgia court declines to exercise jurisdiction, the court "may fashion an appropriate remedy *to ensure the safety of the child and prevent a repetition of the unjustifiable conduct . . . .*"[37] And here, any allegedly unjustifiable conduct on behalf of Combs appears to have been with regard to perfecting service of process upon Delgado. As detailed supra, the trial court properly found that Georgia was the child's home state,[38] but Combs never alleged or presented evidence that Delgado no longer resided in Kansas, which is why the trial court erred in so holding.[39] Thus, the court's improper invocation of subject-matter jurisdiction was due to its own error and not based on any allegedly "unjustifiable conduct" by Combs.

Furthermore, the official comment to UCCJEA § 208, upon which OCGA § 19-9-68 is modeled, specifies that the purpose of the section "applies to those situations [in which] jurisdiction exists because of the unjustified conduct of the person seeking to invoke it," specifically, situations in which a parent abducts a child.[40] Prior to Georgia's codification of the UCCJEA, our interstate child custody act contained a similar provision, which awarded attorney fees when a parent took a child wrongfully or engaged in "similar reprehensible conduct."[41] And in the case sub judice, there are no allegations or

---

[36] OCGA § 19-9-68 (a) (1)-(3); *see also* OCGA § 19-9-61 (describing the criteria for Georgia to have jurisdiction to make an initial child custody determination, including that Georgia be the child's home state); OCGA § 19-9-62 (providing the criteria for exclusive, continuing jurisdiction); OCGA § 19-9-63 (describing the criteria for Georgia to have jurisdiction to modify another court's custody determination).

[37] OCGA § 19-9-68 (b).

[38] *See* OCGA § 19-9-61 (a) (1).

[39] *See* OCGA § 19-9-63 (2).

[40] *See* UCCJEA § 208 cmt. (further explaining that "[t]his section ensures that abducting parents will not receive an advantage for their unjustifiable conduct"); *see also In re Parental Responsibilities of L. S.*, 257 P3d 201, 208-09 (III) (C) (Colo. 2011) (discussing codification of this section in Nebraska and that state's definition of "unjustifiable conduct" as a situation in which "one party without consent improperly removes the child from the party with the right to custody" (punctuation omitted)).

[41] *See Graham v. Hajosy*, 159 Ga. App. 466, 466-67 (283 SE2d 683) (1981) (awarding attorney fees when "defendant husband illegally retained the child in Georgia without the mother's consent" and "the defendant's wrongful withholding of custody of the child necessitated her traveling to Georgia to . . . regain child custody" (punctuation omitted)); *see also Etzion v. Evans*, 247 Ga. 390, 392 (1) (276 SE2d 577) (1981) ("A noncustodial parent who illegally seizes a child or illegally detains a child at the end of a visitation period is not to be given sanctuary by our courts. If it is in the child's best interest that child custody be changed, the noncustodial parent must, instead of snatching that child, seek a change of custody where jurisdiction lies." (citations omitted)); *Reid v. Adams*, 241 Ga. 521, 526 (1) (246 SE2d 655) (1978) ("A nonresident legal custodian should not be forced to relitigate questions of custody

evidence of the sort of "unjustifiable conduct" that would warrant an award of attorney fees pursuant to OCGA § 19-9-68.

As for OCGA § 19-9-92, this statutory provision specifies that the court

> shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.[42]

Delgado argues that because she should have prevailed in the lower court, she should have been awarded fees and expenses pursuant to this statute. Again, although we agree that Delgado should have prevailed below for the reasons set forth in Division 1, we do not agree that she is entitled to an award of expenses and fees pursuant to OCGA § 19-9-92.

The comment to UCCJEA § 312, upon which OCGA § 19-9-92 is modeled, provides that the act gives no special definition to the term "prevailing party" and that each state "will apply its own standard."[43] And the definitions in Georgia's codification of the UCCJEA do not address the meaning of "prevailing party."[44] But at least one other state, Virginia, has determined that its codification of this section does not encompass awarding fees and expenses to a party prevailing on the issue of jurisdiction.[45] And North Carolina has determined that the section does not apply to a prevailing party on a motion for contempt.[46]

In complying with the mandate that we consider "the need to promote uniformity of the [UCCJEA] with respect to its subject matter among states that enact it,"[47] we, too, hold that OCGA § 19-9-92 applies only to the prevailing party in an enforcement

---

in the jurisdiction where the physical custodian is wrongfully holding a child when the legal custodian seeks to enforce his rights in habeas corpus.").

[42] OCGA § 19-9-92 (a).

[43] UCCJEA § 312 cmt.

[44] See OCGA § 19-9-41; OCGA § 19-9-81.

[45] See Tyszcenko v. Donatelli, 670 SE2d 49, 55 (II) (Va. Ct. App. 2008) (holding that similar section in Virginia did not permit award of fees when mother prevailed in action to change jurisdiction).

[46] See Creighton v. Lazell-Frankel, 630 SE2d 738, 740-41 (N.C. Ct. App. 2006) (holding that similar section in North Carolina did not permit award of fees and expenses when father prevailed in action to hold him in contempt).

[47] OCGA § 19-9-101.

proceeding.[48] Indeed, in Georgia's codification of the UCCJEA, Part 1 contains general provisions,[49] Part 2 contains jurisdictional requirements,[50] Part 3 contains enforcement provisions,[51] and Part 4 contains instructions for construing the act.[52] Thus, as with the similar provisions in Virginia and North Carolina, OCGA § 19-9-92 appears in the portion of the UCCJEA that pertains to the enforcement of child custody decrees, i.e., Part 3. And like North Carolina, we consider our holding further bolstered by the fact that Part 2 contains its own provision for fees and expenses, namely OCGA § 19-9-68, discussed supra.[53]

Accordingly, Delgado is not entitled to an award of fees and expenses pursuant to OCGA § 19-9-92.

For all the foregoing reasons, we reverse the trial court's judgment.

*Judgment reversed. Mikell, P. J., and Boggs, J., concur.*

DECIDED FEBRUARY 29, 2012 — 

*Capers, Dunbar, Sanders, Bruckner & Bellotti, Amanda M. Bellotti*, for appellant.
*John A. Tisdale*, for appellee.

---

[48] *See Creighton*, 630 SE2d at 740-41 (holding that similar section's placement in portion of UCCJEA that relates to enforcement limited the award of fees and expenses to a prevailing party in such a proceeding); *Tyszcenko*, 670 SE2d at 55 (II) (same).

[49] *See* OCGA §§ 19-9-40 to -51.

[50] *See* OCGA §§ 19-9-61 to -70.

[51] *See* OCGA §§ 19-9-81 to -97.

[52] *See* OCGA §§ 19-9-101 to -104.

[53] *See Tyszcenko*, 670 SE2d at 54 (II) (holding that if provision similar to OCGA § 19-9-92 applied to all proceedings under the UCCJEA, "a separate statute would not be needed to address the award of attorney's fees under the circumstances described" in the provision similar to OCGA § 19-9-68).