**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS AND BETHEL , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 26, 2018**

# In the Court of Appeals of Georgia

A18A0707. GORELIK v. GORELIK

BETHEL, Judge.

Shortly after Esra and Vladi Gorelik moved to Georgia, Esra took their son to Turkey on vacation and did not return. Esra obtained temporary custody of the child from a Turkish court, and Vladi filed for custody in Georgia. After the Georgia court granted Vladi custody, Esra moved to dismiss the custody award, arguing that the Georgia trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The Georgia trial court found that it had jurisdiction and denied the motion to dismiss. Esra now appeals,[1] and, after a

---

[1] Following its order denying the motion to dismiss, the trial court granted a certificate of immediate review. This Court then granted the application for interlocutory review, leading to the instant appeal. We note, however, that Esra could have brought a direct appeal from the trial court's order under OCGA § 5-6-34 (11) (permitting a direct appeal of "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders."). Here, the issue involved the trial court's jurisdiction over the custody dispute and order awarding

thorough review, we find that the Turkish court had jurisdiction under the UCCJEA to enter the child custody order. We therefore reverse the judgment of the trial court.

We review a question of subject-matter jurisdiction under the UCCJEA de novo. *Kogel v. Kogel*, 337 Ga. App. 137, 140 (786 SE2d 518) (2016). So viewed, the record shows that Esra and Vladi were married in Turkey in 2009. Esra was raised in Turkey and possesses a green card to live in the United States. Vladi is a naturalized United States citizen. After they were married, they moved to Moscow for Vladi's job, but Esra returned to Turkey in April 2012. In February 2013, their son was born in Turkey.

In early 2014, the family moved together to Austria, but by the following year, Esra had returned to Turkey with the child. In May 2015, the family moved to New York, again for Vladi's job, and they remained there until July 2015. At that time, Esra and the child traveled to Turkey, where they stayed until October 2015. They then returned to New York and, in May 2016, the family moved to the State of Georgia. Although Esra and Vladi signed a year-long lease on a home, Esra never obtained a Georgia driver's license or registered to vote in Georgia, and the child had not yet been enrolled in school here.

On June 12, 2016, Esra and the child traveled to Turkey, having lived in Georgia just 22 days. Esra filed for divorce and custody in Turkey on August 15, 2016, and a Turkish court awarded her custody. It is unclear whether Vladi received proper notice of the proceedings prior to the Turkish court's order.

---

temporary custody; therefore, this case could have been brought as a direct appeal. See *Voyles v. Voyles*, 301 Ga. 44, 45-46 (799 SE2d 160) (2017) (Court looks to the "issue raised on appeal" to determine whether a party could bring a direct appeal).

Vladi filed for custody in Georgia, and the trial court awarded Vladi custody in an emergency order. Thereafter, Esra moved to dismiss the order for lack of subject-matter jurisdiction in Georgia. Following a hearing, the trial court denied the motion to dismiss, finding that the child had no "home state;" the child had no significant connections to either Georgia or Turkey; no other state had jurisdiction; and the parties demonstrated their intent to make Georgia their home. In reaching this conclusion, the trial court noted that there was no evidence to establish how the Turkish court had reached its decision, and the trial court declined to consider whether the child had a significant connection to Turkey based on connections acquired after the child had moved there. This appeal followed.

On appeal, Esra raises several related enumerations of error: (1) the trial court lacked jurisdiction under the UCCJEA because (a) the child had no significant connection to Georgia; (b) the trial court should have considered the child's significant connection to Turkey based on the connections that existed prior to the time the custody petition was filed; and (c) the trial court was authorized to consider those connections established after the custody petition was filed in Turkey; and (2) even if the trial court had jurisdiction, it should have declined to exercise jurisdiction because Turkey was the more convenient forum. We begin with the jurisdictional question.

1. The UCCJEA sets forth the circumstances in which a court of this state has jurisdiction to make an initial custody determination. The purposes of the UCCJEA are to

(1) avoid jurisdictional competition, (2) promote cooperation between courts of different states, (3) discourage use of the interstate system to continue custodial controversies, (4) deter child abductions, (5) avoid relitigation of custody decisions in other states, and (6) facilitate enforcement of decrees by other states.

(Citation omitted.) *Delgado v. Combs*, 314 Ga. App. 419, 424 (1), n. 10 (724 SE2d 436) (2012). To these ends, OCGA § 19-9-61 (a) provides that a court of this state has jurisdiction to make an "initial child custody determination" if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Code Section 19-9-67 [setting out factors for inconvenient forum] or 19-9-68 [where jurisdiction is wrongfully obtained] and:     (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant

4

connection with this state other than mere physical presence; and    (B) Substantial evidence is available in this state concerning the

child's care, protection, training, and personal relationships;    (3) All courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Code Section 19-9-67 or 19-9-68; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3) of this subsection.

A "child custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child[,]" and includes a "permanent, temporary, initial, and modification order." See OCGA § 19-9-41 (3). Given the "relative dearth of Georgia law on the subject," when analyzing the jurisdictional provisions of the UCCJEA, we may look to case law in other states. *Delgado*, supra, 314 Ga. App. at 425.

Jurisdiction under the UCCJEA is heavily dependent on the question of the child's "home state." See OCGA § 19-9-61; *Bellew v. Larese*, 288 Ga. 495, 498 (706 SE2d 78) (2011). As the trial court here correctly found, however, neither Turkey nor Georgia would be the "home state" in this case because the child did not live in either

5

place for at least six months prior to the filing of any custody petition.[2] OCGA § 19-9-41 (7).

We thus turn to the other jurisdictional provisions of the UCCJEA. Where the child has no home state, OCGA § 19-9-61 (a) (2) provides that Georgia may exercise jurisdiction over the custody dispute if

> (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

OCGA § 19-9-61 (a) (2). Alternatively, courts of this state may exercise jurisdiction where no state would qualify under any of the other jurisdictional provisions of the UCCJEA. OCGA § 19-9-61 (a) (4).

Importantly, however,

> a court of this state may not exercise its jurisdiction under [OCGA § 19-9-61 (a) (1)] if, at the time of the commencement of the proceeding, a

---

[2] Vladi initially argued that Georgia was the child's home state because Esra intended to return to Georgia after the vacation in Turkey and, thus, the vacation time counted towards the required six-month period. However, Vladi's claim that Esra intended to return to Georgia does not permit us to include that time frame in calculating the length of time necessary for Georgia to qualify as the home state. *Kogel*, supra, 337 Ga. App. at 141-142.

6

proceeding concerning the custody of the child has been commenced in a court of another state *having jurisdiction substantially in conformity with this article*; unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Code Section 19-9-67.

(Footnotes omitted; emphasis supplied.) *Bellew*, supra, 288 Ga. at 496-497. We consider jurisdiction in a foreign nation in the same manner as if it were a sister state. OCGA § 19-9-44 (a). Thus, because the Turkish case was commenced prior to this action, Turkey's custody determination must be enforced if it was made "under factual circumstances in substantial conformity with the jurisdictional standards" of the UCCJEA. OCGA § 19-9-44 (b); *Bellew*, supra, 288 Ga. at 496-497. Accordingly, the question is whether the Turkish court's "expression of jurisdiction . . . was done in substantial compliance with the UCCJEA."[3] Id. at 498.

Here, the trial court erred when it concluded that there was no evidence that the Turkish court's order awarding custody to Esra was in substantial conformity with the UCCJEA. While the Turkish court order does not expressly state the basis for its assertion of jurisdiction, the record demonstrates that Turkish jurisdiction rests on firm ground.[4] The child was born in Turkey. The child has lived in Turkey longer than

---

[3] We note that the statutes do not define "substantial conformity." Other states have construed this to mean having an opportunity to be heard.

[4] Contrary to the dissent's argument, *Bellew* does not make an analysis of jurisdiction under the UCCJEA dependent on the foreign court's articulated "expression of jurisdiction" in every case. Rather, the Italian court's expression of

7

in any other place. The child's mother was raised in Turkey. Accordingly, even excluding all evidence related to and following the 2016 trip to Turkey that preceded the filing of the Turkish suit, it is patently clear that the child and the child's parents have a significant connection with Turkey. See OCGA § 19-9-61 (a) (2) (A). With respect to the child and the mother, that connection is definitively stronger than their connection with Georgia. Also clear is the fact that there is substantial evidence in Turkey concerning the child's care, protection, training, and personal relationships that predates the 2016 trip to Turkey. See OCGA § 19-9-61 (a) (2) (B). Therefore, the record supports a finding that the Turkish court's assertion of jurisdiction was in substantial compliance of Georgia law. See OCGA §§ 19-9-44 and 19-9-61 (a) (2).

2. Because of our holding in Division 1, we need not address Esra's remaining enumeration of error.

*Judgment reversed. Andrews, J., concurs. Miller, P.J., dissenting\*.*

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

---

jurisdiction in *Bellew* was deemed insufficient because it failed to show that the order conformed with the provisions set forth in the UCCJEA. 288 Ga. at 499. The existence of a home state is critical to *Bellew*'s analysis and holding, and the Georgia trial court was communicating directly with the Italian court. Id. at 496-499. Here, by contrast, the Turkish court had no indication that its jurisdiction was in question, there was no home state, and the record contains sufficient facts to support Turkish jurisdiction.

A18A0707. GORELIK v. GORELIK.

MILLER, Presiding Judge, dissenting.

I cannot agree with the majority's conclusion that the trial court erred in its decision not to defer to the Turkish court's custody order. Accordingly, I respectfully dissent.

Before deferring to another nation's custody determination, our courts must determine that the custody finding was made "under factual circumstances in substantial conformity with the jurisdictional standards" of the UCCJEA. OCGA § 19-9-44 (b); *Bellew*, supra, 288 Ga. at 496-497. In this regard, we consider only the other nation's "expression of jurisdiction." *Bellew*, supra, 288 Ga. at 498.

Here, the only evidence in the record of the Turkish proceeding includes a translation of the Turkish court's order, stating "[t]he custody of the joint child of the

Parties . . . shall be granted to the Plaintiff, the mother of the child, temporarily pursuant to Article 169 of the Turkish Civil Code." The translation contains *no* "expression of jurisdiction." Indeed, it contains *no* analysis regarding jurisdiction at all. Based on the order, the trial court could not determine what standard the Turkish court relied on to exert jurisdiction or even whether the Turkish court conducted *any* jurisdictional analysis. *Bellew*, supra, 288 Ga. at 499 ("Although [the mother] points to facts in the case that show certain contacts between Italy, the parties, and the litigation . . . these facts were no part of the inquiry by the Tribunale di Firenze, and we cannot say that they serve to demonstrate that the Tribunale di Firenze's expression of jurisdiction over the child custody issue is "substantially in conformity with" the UCCJEA."). Moreover, if we conclude, as other courts do, that "substantial conformity" means an opportunity to be heard, there is no evidence in the record that Vladi even received service of process in the Turkish suit.

Thus, I would agree with the trial court that the Turkish court's order does not contain an "expression of jurisdiction" substantially in conformity with the UCCJEA, and I would only remand the case for the trial court to consider Esra's claim that the Georgia court was an inconvenient forum. See *Bellew*, 288 Ga. at 499; OCGA § 19-9-67 (b).