**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 24, 2022**

# In the Court of Appeals of Georgia

A22A0399. MAKIN v. DAVIS.

GOBEIL, Judge.

Following the grant of his application for discretionary review, Andrew Rufus Makin (the "father") appeals from the superior court's order denying his petition to domesticate and register a foreign judgment governing child custody. On appeal, the father argues that Katherine Elizabeth Ann Davis (the "mother") failed to establish that (1) the foreign court lacked jurisdiction over the matter; (2) the foreign child custody determination has been vacated, stayed, or modified; and (3) she did not receive notice of the foreign court proceedings. For the reasons that follow, we now reverse.

"When reviewing an order in a child custody case, we apply a de novo standard of review to any questions of law decided by the trial court." *Frith v. Harvey*, 361 Ga.

App. 348, 349 (864 SE2d 460) (2021) (citation and punctuation omitted). The record shows the following. The father and the mother are former spouses, divorced by a final judgment and decree of the Superior Court of Monroe County (the "superior court") entered on September 5, 2019. The parties have one minor child who was born in Georgia in 2014.[1] The family resided in the United Kingdom for a period of time, but the mother and the child returned to Georgia around March 2017 while the father remained in the United Kingdom. The father applied for a "Child Arrangements and Prohibited Steps Order" in the Family Court Sitting at Reading County Court in London, United Kingdom (the "U.K. family court") and, on March 6, 2017, the U.K. family court issued an order (the "2017 CAPSO"), setting forth certain obligations of the parents as to custody of the child, including the mother's obligation to return the child to the father in England by June 3, 2018. The 2017 CAPSO outlined that the parties agreed that U.K. courts retained "primary jurisdiction" to consider custody matters related to the child, and the mother agreed not to challenge the 2017 CAPSO or initiate any other legal proceedings related to the child in Georgia or elsewhere in the United States.

---

[1] The record shows that the parties also had a second child, but that child is not at issue in the instant appeal.

2

On March 8, 2017, the father filed a petition in the superior court to have the 2017 CAPSO domesticated in and recognized by the Georgia court. In his petition, the father stated that he lives in the United Kingdom and the mother and child live in Monroe County; that the parties have agreed that the U.K. courts have primary jurisdiction to consider matters related to parenting the child; that the child is a resident of the United Kingdom and courts in that country are best suited to make decisions about the child's upbringing and welfare; that the parents have agreed not to initiate proceedings in any courts in the United States regarding the child; and that the order is being domesticated so that both parents can exercise their custody and visitation rights pursuant to the 2017 CAPSO. In a pleading filed on March 15, 2017, the mother acknowledged service of the petition and agreed to the domestication of the 2017 CAPSO. The superior court entered a final order domesticating the 2017 CAPSO in July 2018, nunc pro tunc to March 13, 2017.

The mother filed an application in the U.K. family court to permanently remove the child to the United States, and the father applied for the child's return to the United Kingdom. On April 18, 2019, the judge in the U.K. family court signed a "Child Arrangements Order" (the "2019 CAO") which stated that the mother is permitted to remove the child to the United States until June 22, 2021, and provided

for visitation by the father. The 2019 CAO stated that the applications are adjourned and would be further reviewed at the next hearing. It specified that a review hearing would be conducted by video-conference on March 1, 2021, and provided that the father would have visitation in the United States and United Kingdom through 2022 and "after summer 2022." It further provided that where the 2019 CAO is in force, no person may cause the child to be removed from the United Kingdom without the written consent of both parents or the leave of the court. It does not appear from the record that either party ever petitioned to vacate, stay, or modify the 2019 CAO.

On January 30, 2019, four months before the 2019 CAO was entered, the mother filed a complaint for divorce in the superior court. In her complaint, the mother alleged that she is a resident of Monroe County, the father is a resident of the United Kingdom, and their child was born in Georgia. She represented that the parties separated on October 18, 2016. The mother alleged that she has not been a party in any other litigation in the United States concerning the child and that no foreign orders concerning the child have been registered or confirmed in Georgia or any other state pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). She sought primary physical custody of the child with the father having

4

visitation.[2] On September 5, 2019, after the entry of the 2019 CAO, the superior court entered a Second Amended Final Judgment and Decree of divorce, granting the mother primary physical custody and awarding the parents shared joint legal custody of the child.

On September 28, 2020, the father filed a petition to domesticate and register the 2019 CAO in the superior court. The father stated that the mother and child are permanent residents of Georgia, that Georgia is the child's home state for purposes of enforcing his parenting time under the 2019 CAO, that the parties are subject to the 1996 Convention between the United States and Great Britain that determines which state has jurisdiction regarding child custody, and that the 2019 CAO governs the parties' parenting time with the child. In her answer to the petition, the mother admitted permanently residing in the United States, denied most other allegations, and asked that the petition be denied.

In a letter brief submitted to the superior court, the mother asserted that the domestication of the foreign decree is contrary to Georgia public policy given the father's conduct and the best interest of the child, and that the Georgia final divorce

---

[2] In his appellant brief, the father represents that he was served with the complaint for divorce in February 2019 while he was in Georgia visiting the child; he does not indicate whether he answered the complaint.

5

decree and incorporated documents govern the parents's rights and responsibilities because they are final (unlike the 2019 CAO). Following a hearing, the superior court entered an order denying the father's petition to domesticate the foreign judgment.[3] The father filed an application for discretionary review, which we granted. See Case No. A21D0214 (Mar. 3, 2021). The instant appeal followed.

The UCCJEA was created "to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties when multiple states are involved." *Delgado v. Combs*, 314 Ga. App. 419, 424 (724 SE2d 436) (2012) (citation and punctuation omitted). Georgia adopted its version of the UCCJEA in 2001, which is codified at OCGA § 19-9-40 et seq. Part 2 of the UCCJEA contains provisions related to a court's jurisdiction over custody matters. See OCGA §§ 19-9-61 through 19-9-70.

As relevant here, pursuant to OCGA § 19-9-83 (a),

[a] court of this state shall recognize and enforce a child custody determination of a court of another state[4] if the latter court exercised

---

[3] The superior court's order included no findings of fact or conclusions of law.

[4] For purposes of the UCCJEA, "[a] court of [Georgia] shall treat a foreign county as if it were a state of the United States[.]" OCGA § 19-9-44 (a).

6

jurisdiction in substantial conformity with this article or the determination was made under factual circumstances meeting the jurisdictional standards of this article and the determination has not been modified in accordance with this article.

OCGA § 19-9-85 (a) provides that a child custody determination issued by a court of another state may be registered in this state when the person seeking registration follows certain procedures. Upon receiving the required documents, the registering court "*shall* [c]ause the determination to be filed as a foreign judgment" and give notice and an opportunity to contest the registration to any person who has been awarded custody or visitation in the custody determination. OCGA § 19-9-85 (b) (emphasis supplied).

OCGA § 19-9-85 (d) provides:

A person seeking to contest the validity of a registered order must request a hearing within 20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes that:

(1) The issuing court did not have jurisdiction under Part 2 ["Jurisdiction"] of [the UCCJEA];

7

(2) The child custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under Part 2 of this article; or

(3) The person contesting registration was entitled to notice, but notice was not given in accordance with the standards of Code Section 19-9-47 in the proceedings before the court that issued the order for which registration is sought.

1. The father contends that the superior court erred by denying his petition to domesticate the 2019 CAO pursuant to OCGA § 19-9-85 (b) & (d), because the mother did not establish that the issuing court lacked jurisdiction under Part 2 of the UCCJEA. According to the father, the mother submitted to the jurisdiction of the foreign court by filing an application in the U.K. family court to remove the child to the United States, which that court granted in the 2019 CAO through June 2021. He further highlights that the mother submitted to the foreign court's jurisdiction by acknowledging service of and agreeing to the domestication of the 2017 CAPSO, which prohibited the parties from challenging in the United States the fact that the U.K. courts had jurisdiction over custody matters involving the child.

Pursuant to the UCCJEA, the mother had the burden of establishing that the U.K. family court did not have jurisdiction when it entered the 2019 CAO. OCGA §

19-9-85 (d) (1). The mother maintains that the U.K. family court lacked jurisdiction because it did not undertake any analysis of the minor child's home state, as required under OCGA § 19-9-61 (a) (1), prior to entry of the 2019 CAO. She states that under the UCCJEA, "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." OCGA § 19-9-61 (c). The mother, however, has not shown that the 2019 CAO was "an initial child custody determination" governed by that code section. See OCGA § 19-9-61 (a) (1) ("a court of this state has jurisdiction to make an initial child custody determination only if . . . [Georgia] is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]"). Moreover, even if that code section applies, the mother has not cited any law mandating that the foreign court order include such an express finding as to the child's home state under OCGA § 19-9-61. On the contrary, this Court has held that "the UCCJEA [does] not require that the court include it its order express factual findings as to the children's home state." *Ravi v. Burns*, 354 Ga. App. 608, 612 (1) (841 SE2d 407) (2020) (involving Georgia court exercising jurisdiction to consider petition to modify child custody

9

determination made by court of another state) (punctuation omitted). See also *Wondium v. Getachew*, 289 Ga. 208, 210 (2) (710 SE2d 139) (2011) (rejecting father's argument that the UCCJEA required "jurisdictional findings regarding the children's home state" in the body of the court's custody modification order because the Court found "no such authority") (punctuation omitted). It follows that the mother has failed to carry her burden of showing that the U.K. family court "did not have jurisdiction under Part 2 of [the UCCJEA]." OCGA § 19-9-85 (d) (1).[5]

---

[5] We also note that the mother's arguments on appeal challenging the jurisdiction of the U.K. family court to enter the 2019 CAO contradict her earlier position in which she agreed that the foreign court has jurisdiction over the child custody matter. Specifically, the 2017 CAPSO, which was domesticated in Georgia with the mother's consent in March 2017, was still in effect when the mother filed the application to remove the child from the United Kingdom pursuant to a provision in the 2017 CAPSO (which resulted in the issuance of the 2019 CAO), as well as when she filed for divorce in the superior court. Under the provisions of the 2017 CAPSO, the mother expressly agreed, among other things, that the U.K. courts have primary jurisdiction to consider matters related to parenting the child. **See *Lynn v. Lowndes County Health Svcs., LLC*, 354 Ga. App. 242, 250 (2) (b) (840 SE2d 623) (2020) ("(U)nder the doctrine of judicial estoppel, a party cannot take a position, persuade a court to accept the same, and then later assert an inconsistent position.") (citation and punctuation omitted). However, the issue of judicial estoppel was not raised below or on appeal, and thus, we need not address it to resolve the issues in the instant appeal. See *9766, LLC v. Dwarf House, Inc.*, 331 Ga. App. 287, 291 (4) (b) (771 SE2d 1) (2015) ("This [C]ourt is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).**

2. The father asserts that the superior court erred by denying his petition when the mother failed to establish that the child custody determination sought to be registered has been vacated, stayed, or modified by a court with jurisdiction to do so under Part 2 of the UCCJEA. Indeed, there is no indication in the record that the 2019 CAO was vacated, stayed, or modified. Instead, the 2019 CAO appears to have been in effect beginning in April 2019 and continuing "after summer 2022." In fact, the 2019 CAO did not have an expiration date or termination event and it contained hearing and visitation dates that had not yet passed when the father filed the petition to domesticate that order. Thus, the mother failed to meet her burden, under OCGA § 19-9-85 (d) (2), to challenge the validity of the 2019 CAO sought to be registered in the instant action.

3. Finally, the father contends that the superior court erred by denying his petition when the mother did not establish that she was entitled to notice in accordance with OCGA § 19-9-47 and was not given such notice before the U.K. family court issued the judgment being domesticated, the 2019 CAO.

Under OCGA § 19-9-85 (d) (3), a person contesting the registration of a child custody determination is entitled to notice in the proceedings before the court that issued the order for which registration is sought — notice in accordance with the

standards set forth in OCGA § 19-9-47. But OCGA § 19-9-47 (c) provides that "[n]otice is not required for the exercise of jurisdiction with respect to a person who submits to the jurisdiction of the court." Inasmuch as the mother clearly submitted herself to the jurisdiction of the U.K. family court on the issue of child custody — through her application in the U.K. family court to permanently remove the child to the U.S. that resulted in the issuance of the 2019 CAO — she failed to establish that she did not receive the required notice of the U.K. proceeding as outlined in OCGA § 19-9-85 (d) (3).

Because the mother failed to meet her burden under OCGA § 19-9-85 (d) contesting registration of the 2019 CAO, the trial court erred in denying the father's petition to register that order and we now reverse.

*Judgment reversed. McFadden, P. J., and Pinson, J., concur.*