No. 98-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 212

IN RE THE CUSTODY OF N.G.H.,

a Minor Child.

DOUGLAS A. RILEY,

Petitioner and Respondent,

v.

KATHERINE M. HUBBARD,

Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable John S. Henson, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Bryan Norcross, Attorney at Law, Lincoln, Montana

For Respondent:

Terry G. Sehestedt, Attorney at Law, Missoula, Montana

Submitted on Briefs: July 2, 1998

Decided: August 25, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1 In the Fourth Judicial District Court, Missoula County, Douglas A. Riley (Douglas) and Katherine M. Hubbard (Katherine) were awarded joint legal custody of their minor daughter; physical and residential custody were awarded to Douglas. Katherine appeals. We affirm.**

## ISSUES

**¶2 1. Did the District Court err in concluding that it possessed subject matter jurisdiction to determine the custody of a minor child under § 40-4-211, MCA?**

**¶3 2. Did the District Court infringe upon Katherine's constitutional right to travel by assuming jurisdiction over this child custody dispute?**

## BACKGROUND

**¶4 This cause was initiated by petition filed by Douglas seeking the custody of N.G. H., a female child born to Douglas and Katherine on December 7, 1990, in Missoula, Montana. There has been no prior custody determination for this child, and there are no other custody proceedings pending in any other state.**

¶5 From her birth until January 1, 1995, N.G.H. resided in Missoula, Montana, with both of her parents and two twin half-sisters by her mother. Due to a change in employment, Katherine relocated to Alabama sometime in December 1994. The three children joined her shortly thereafter and remained with her in Alabama until May 20, 1996. From May 20, 1996 to August 14, 1996, the three children temporarily returned to Montana and resided with Douglas. On August 14, 1996, Katherine's mother, acting as Katherine's agent, assumed physical custody of the children and returned them to Alabama. Douglas filed his petition for custody of N.G.H. on August 19, 1996, in the Fourth Judicial District Court in Missoula County, Montana. Katherine moved to dismiss the action for lack of subject matter jurisdiction on September 6, 1996.

¶6 N.G.H. is a child with specific needs resulting from a rare genetic disorder which affects her motor skills, cognitive abilities and language skills. At the chronological age of six years and six months, N.G.H. was at the equivalent developmental stage of a child of two years and eight months. N.G.H. suffers from an eating disorder which manifests itself in an indifference to food. As of the time of the District Court's order N.G.H. was not yet toilet trained. Due to her genetic disorder and its attendant mental and physical disabilities, Douglas and Katherine had N.G.H. evaluated by the Shodair Hospital in Helena, Montana, and the Child Developmental Center (CDC) in Missoula, Montana, on various occasions throughout 1991, 1992 and 1994. The Shodair Hospital in Helena also performed a follow-up examination of N.G.H. on August 6, 1996, just prior to her return to Alabama.

¶7 On September 9, 1996, Katherine and the children relocated to Houston, Texas, and N.G.H. remained in Houston with her mother until the close of the 1996/1997 school year pursuant to the terms of a temporary joint custody order entered by the Montana court on January 31, 1997. Since June 1, 1997, N.G.H. has been residing with her father in Missoula, Montana. Upon the recommendations of the Special Master appointed in this case, the District Court entered a final order on January 21, 1998, awarding joint custody to Douglas and Katherine and physical and residential custody of N.G.H. to Douglas.

## STANDARD OF REVIEW

¶8 We review the District Court's findings of fact to determine whether they are

clearly erroneous. *In re Marriage of Brownell* (1993), 263 Mont. 78, 81, 865 P.2d 307, 309. "A court's findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *In re Marriage of Shupe* (1996), 276 Mont. 409, 416, 916 P.2d 744, 749. Conclusions of law made by the District Court are reviewable *de novo*. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863.

## FIRST ISSUE

¶9 Did the District Court err in concluding that it possessed subject matter jurisdiction to determine the custody of a minor child under § 40-4-211, MCA?

¶10 The provisions of the Uniform Child Custody Jurisdiction Act (UCCJA) govern all child custody actions brought before the courts of Montana in which there is potential for jurisdictional conflict between multiple states. *See* § 40-7-102, MCA; *Shupe*, 276 Mont. at 415, 916 P.2d at 746-47. The UCCJA incorporates by reference the jurisdictional provisions of § 40-4-211, MCA, to determine whether a court of this state is competent to decide a particular child custody matter. Section 40-7-104, MCA. Section 40-4-211, MCA, lists four alternative grounds upon which the courts of Montana may exercise subject matter jurisdiction, only one of which need apply before jurisdiction may be invoked. *Shupe*, 276 Mont. at 415, 916 P.2d at 748.

¶11 The relevant portions of the statute read:

> (1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) this state:

> (i) is the home state of the child at the time of commencement of the proceedings; or

> (ii) had been the child's home state within 6 months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for

other reason and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because:

(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and

(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and:

(i) has been abandoned; or

(ii) it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d)(i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

(ii) it is in his best interest that the court assume jurisdiction.

Section 40-4-211, MCA (1995).

**¶12 The Montana court properly exercised jurisdiction under § 40-4-211(1)(b), MCA. In its January 31, 1997 Order, the District Court made a finding that both Douglas and his daughter had significant connections with the State of Montana and that there was substantial evidence in this state concerning the present and future care of N.G.H. The District Court based this finding on the fact that both Douglas and N.G.H.'s maternal grandmother resided in the State of Montana and that both the Shodair Hospital in Helena and the CDC in Missoula had previously conducted evaluations and made recommendations concerning N.G.H.'s physical and mental condition related to her genetic disorder.**

¶13 The parties do not dispute the District Court's finding regarding Douglas' significant connections with the State of Montana. However, Katherine contends that the District Court's findings regarding N.G.H.'s connections to Montana are clearly erroneous because the evidence showed the child had no personal contact with the State of Montana for the sixteen months immediately preceding the filing of the petition, with the limited exception of a brief period of time between May 20, 1996 and August 14, 1996; the evaluations performed by the CDC were already two years old at the time Douglas filed his petition; and the Shodair Hospital had had only one additional contact with N.G.H. since her original evaluations were completed in 1994. By comparison, Katherine asserts, N.G.H.'s connections to Alabama at that time were much closer; she was and had been residing in Alabama for the preceding sixteen months, she was enrolled in school there, she was receiving special education and training there, she was under the care of Alabama doctors, and she had developed relationships with people living in Alabama, including Katherine, her twin half-sisters, her great grandparents, neighbors and friends. It is Katherine's position that the cumulative result of these connections was that all of the evidence concerning N.G.H.'s present and future care, protection, training and personal relationships was located in Alabama at the time Douglas filed his petition for custody.

¶14 We disagree. The fact that N.G.H. may have had strong contacts with Alabama has no bearing on a determination of whether the child nevertheless maintained significant connections to Montana. "Section 40-4-211(1)(b), MCA, does not require that the child's *only* significant connection be with Montana in order for a district court to assume jurisdiction. The statute requires only *a* significant connection." *In re Marriage of Bolton* (1984), 212 Mont. 212, 218, 690 P.2d 401, 404. Evidence of significant connections with another state does not equate to a lack of significant connections with this state. *Shupe*, 276 Mont. at 417, 916 P.2d at 748.

¶15 Likewise, the length of time N.G.H. spent in Montana immediately preceding the filing of the custody petition is not determinative of the issue of whether there is substantial evidence in this state relating to her present and future care, protection, training, and personal relationships. *Shupe*, 276 Mont. at 417, 916 P.2d at 748. Additional findings by the District Court reflect that the child was born in Montana and lived in this state for four years before being moved to Alabama, had undergone her initial diagnosis and treatment at medical facilities within Montana, and had only

recently been seen for a follow-up examination in Helena when the petition was filed. She also has a parent who is a long time resident of the State of Montana and who has maintained contact with the child throughout her life, including personal visits in both Alabama and Montana. These facts are sufficient to support a finding that there exists within this state substantial evidence related to the child's present and future care, protection, training and personal relationships.

¶16 Our own review of the record demonstrates that there is substantial evidence to support the District Court's findings, that the District Court has not misapprehended the evidence before it, and that the factual determinations of the District Court regarding N.G.H.'s connections to the State of Montana and the local availability of evidence regarding her present and future care, protection, training and personal relationships are not clearly erroneous. We therefore hold that the District Court properly exercised its subject matter jurisdiction over this dispute pursuant to § 40-4-211(1)(b), MCA.

¶17 Katherine's argument that the Montana court should not have exercised jurisdiction over this matter because Montana was not the child's home state as of the time of the filing of the custody petition is not persuasive. Because § 40-4-211, MCA, is written in the disjunctive, subject matter jurisdiction in the Montana courts will lie when any one of its provisions is satisfied. An inquiry into whether or not Montana was the home state for this child at the time of the filing of the petition would be relevant only under the application of § 40-4-211(1)(a) or § 40-4-211(1)(d), MCA. Since we have already concluded that subject matter jurisdiction was properly conferred through the operation of § 40-4-211(1)(b), MCA, it is not necessary for us to determine whether or not the District Court erred in failing to find that Montana was the child's home state as of the commencement of these proceedings.

## SECOND ISSUE

¶18 Did the District Court infringe upon Katherine's constitutional right to travel by assuming jurisdiction over this child custody dispute?

¶19 Katherine argues that under *Shapiro v. Thompson* (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600, and *In re Custody of D.M.G.,* 1998 MT 1, 951 P.2d 1377, 55 St. Rep. 1, her constitutional right to travel has been infringed as a result of the Montana court's exercise of jurisdiction in this matter. As Douglas correctly

indicates in his response, this is the first time such an issue has been raised throughout the course of these proceedings. "It is a settled rule in Montana that we will not review an issue raised for the first time on appeal." *In re Marriage of Erler* (1993), 261 Mont. 65, 73, 862 P.2d 12, 18; *In re Marriage of Starks* (1993), 259 Mont. 138, 146, 855 P.2d 527, 532. As this issue was not raised by Katherine at any time prior to her appeal, we decline to address it here.

¶20 We hold that the District Court did not err in exercising subject matter jurisdiction over this custody proceeding pursuant to § 40-4-211(1)(b), MCA.

¶21 Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.