No. 99-310

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 3N

IN RE THE CUSTODY OF N.G.H.,

A Minor Child.

DOUGLAS A. RILEY,

Petitioner and Respondent,

v.

KATHERINE M. HUBBARD,

Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable John S. Henson, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Bryan Norcross, Attorney at Law, Lincoln, Montana

For Respondent:

Terry G. Sehestedt, Attorney at Law, Missoula, Montana

Submitted on Briefs: December 2, 1999

Decided: January 6, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Douglas Riley filed a petition in the Fourth Judicial District Court, Missoula County, for custody of his daughter, N.G.H., who has been diagnosed with a genetic disorder which has caused her severe developmental and learning delays. In a previous appeal filed by Katherine Hubbard, N.G.H.'s mother, we affirmed the decision of the District Court on issues related to subject matter jurisdiction. *See In re Custody of N.G.H.*, 1998 MT 212, 290 Mont. 426, 963 P.2d 1275. In this appeal, we affirm the implementation of the District Court's custodial arrangement.

¶3. We consider the following issues:

¶4.a. Was the custodial arrangement final before Katherine made her previous appeal, thereby precluding her from making this appeal?

¶5.b. Did the District Court abuse its discretion when it decided that N.G.H. should reside primarily with Douglas?

¶6.c. Did the District Court abuse its discretion when it restricted Katherine's visits with N.G.H. to Missoula?

¶7. Central to this appeal are several orders which were entered by the District Court. The

first order, entered January 31, 1997, denied Katherine's motion to dismiss this action on grounds of subject matter jurisdiction and awarded the parties temporary joint legal custody of N.G.H. Pending further order, the court allowed N.G.H. to reside with Katherine in Texas during that school year and with Douglas during the summer and holidays.

¶. The court's second order, entered January 21, 1998, adopted a Special Master's recommended findings of fact and conclusions of law that the parties be awarded joint legal custody of N.G.H. and that a psychologist Guardian ad Litem be appointed to represent N.G.H.'s best interests in determining a final custodial/visitation arrangement. The Special Master recommended that N.G.H. live with Douglas with all visitations by Katherine to occur in Missoula, until further order of the court.

¶9. Based on the Special Master's second recommended findings of fact and conclusions of law adopting the Guardian ad Litem's suggestions, the District Court entered an order on March 31, 1999, and made no changes to its previous custodial/visitation arrangement.

¶10. Katherine appealed the District Court's January 31, 1997, and January 21, 1998, orders on issues involving subject matter jurisdiction, and we affirmed. *See N.G.H.* Now, Katherine appeals the District Court's March 31, 1999, order regarding the implementation of the custodial arrangement.

## ISSUE 1

¶11. Was the custodial arrangement final before Katherine made her previous appeal, thereby precluding her from making this appeal?

¶12. Douglas argues that Katherine missed her opportunity to appeal the District Court's custodial arrangement because the January 21, 1998, order from which she originally appealed was final in this regard. Katherine disputes Douglas's argument and takes the position that the court's custodial and visitation arrangement was not final until the District Court entered its March 31, 1999, order. To some extent, both parties are correct.

¶13. The Special Master's recommendations, provide that "[a] weighing of . . . factors results in the recommendation that the parties be awarded joint legal custody of [N.G.H.]." By the adoption of the District Court in its January 21, 1998, order, this language is final by its very terms, especially as compared to language used in the District Court's January

31, 1997, order which provided the parties "temporary joint legal custody."

¶14. Notwithstanding, the Special Master stated in her recommendations that "[t]here are numerous unanswered questions which have raised concerns . . . in [an] attempt to issue a recommendation as to a final custodial/visitation order." As a consequence, the Special Master recommended that a Guardian ad Litem be appointed to establish a "custody/long-distance visitation plan" pursuant to § 40-4-224(4), MCA (1995).

¶15. Section 40-4-224(4), MCA (1995), provides that

a.The court may, at any time, direct the parties to consult with appropriate professionals for the purpose of assisting the parties to formulate a plan *for implementation* of the custody order or to resolve any controversy that has arisen in the implementation of a plan for custody.

b.(Emphasis added.) To formulate an implementation plan, the Special Master requested specific information from the Guardian ad Litem which would allow her to determine whether a typical physical custodial arrangement, in which N.G.H. stayed with one parent during the school year and with the other during school holidays, was in N.G.H.'s best interest. Thus, although an award of joint legal custody was made in the court's January 21, 1998, order, physical custodial arrangements were not final until the District Court's March 31, 1999, order.

¶16. No other conclusion is plausible. This is not a case involving final visitation rights subject to modification, as Douglas would have us believe. *See* § 40-4-217(3), MCA (1995). Clearly, arrangements for physical custody and visitation had not been finalized until the District Court considered the Guardian ad Litem's suggestions. Nor is this an appeal from a failure to modify an existing custodial award. Under the law, modifying or amending a custodial award requires there to be a change in circumstances, which is not at issue here. *See* § 40-4-219, MCA.

¶17. We conclude that since Katherine had no opportunity to appeal the implementation of the court's physical custodial arrangement before now, we will consider her appeal.

## ISSUE 2

¶18. Did the District Court abuse its discretion when it decided that N.G.H. should reside

primarily with Douglas?

¶19. Given the Guardian ad Litem's suggestion that N.G.H. needs a high degree of predictability and structure because of her disability, the Special Master suggested and the District Court ordered there be no change in N.G.H.'s living situation with Douglas. The Special Master nonetheless determined that Katherine has the necessary abilities to meet N.G.H.'s needs and that "[e]ach [parent] is qualified to care for [her]." The Special Master also determined that although Katherine and Douglas have had difficulty communicating in the recent past, they are very capable of successfully communicating again. Based on these determinations, we conclude that none of these matters are at issue despite the parties' briefing of them.

¶20. The only argument Katherine makes that requires our consideration is whether the District Court erred when it awarded Douglas physical custody of N.G.H. because N.G.H. already lived with him. Katherine refers to the following statement offered by the Special Master: "[S]ince the child is enrolled in an educational program in the State of Montana, it is in the child's best interest that she reside with her father." Katherine argues that at the time this statement was made N.G.H. also was enrolled at a school in Texas. The facts reveal that N.G.H. was enrolled at both schools and that Douglas was seeking court order to keep N.G.H. with him at the end of her summer visit.

¶21. These past events, however, do not negate the stability that N.G.H. is provided by staying in Missoula now. The evidence indicates that N.G.H. has lived in a stable environment with Douglas for over two years and that, according to the Guardian ad Litem, moving her back to Texas would cause her to regress. For this reason, we conclude that the court's findings are not clearly erroneous and that it did not abuse its discretion when it awarded physical custody of N.G.H. to Douglas.

ISSUE 3

¶22. Did the District Court abuse its discretion when it restricted Katherine's visits with N.G.H. to Missoula?

¶23. To maximize N.G.H.'s stability, the District Court limited Katherine's visits with N.G.H. to a number of hours in a day, a number of days in a week, and a number of overnight stays, all in Missoula. When the Special Master asked the Guardian ad Litem whether a "typical" custody plan would work, whereby N.G.H. would spend the school year with one

parent and the summer with another parent, the Guardian ad Litem replied that the ideal situation for N.G.H. would be for Katherine to continue to spend the summers in Missoula. The Guardian ad Litem believes that taking N.G.H. to Texas for the summer would cause her to regress.

¶24. Katherine argues that this type of physical custodial arrangement strips from her any significant contact with N.G.H. and her right to have frequent and continuing contact with her daughter to insure that a meaningful relationship continues between them. Katherine cites *In re Marriage of Bergner* (1986), 222 Mont. 305, 307, 722 P.2d 1141, 1143, in which this Court stated that:

a.Joint custody assures minor children frequent and continuing contact with their mother and their father. It further encourages the parents to share in the rewards, the privileges and the responsibilities of rearing their children.

b.(Citing § 40-4-222, MCA (1995).) Katherine fails to recognize, however, that this provision must be coupled with the child's interests. In awarding joint custody, the District Court was required to implement a custodial and visitation arrangement with the best interest of the child as its primary consideration. *See* § 40-4-224(2)(a), MCA (1995).

¶25. Katherine is disturbed by the marked contrast between her visits with N.G.H. as compared to the visits Douglas was allowed pursuant to the court's January 31, 1997, order. Douglas was allowed to have N.G.H. stay with him in Missoula the entire summer vacation and holidays, while N.G.H. otherwise lived with Katherine during the school year. Katherine contends that since the arrangements for Douglas's visits were made in light of substantial evidence of N.G.H.'s condition and N.G.H.'s condition has not changed, the court should provide her a similar arrangement. Finally, Katherine believes that the court's implementation of the custodial arrangement is not in N.G.H.'s best interest.

¶26. We do not agree. There is substantial evidence to support the District Court's determination that N.G.H. needs a high degree of stability, which this arrangement provides.

¶27. Thus, we conclude that the District Court did not abuse its discretion when it restricted Katherine's visits with N.G.H. to Missoula.

¶28. The District Court is affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY