**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2018**

# In the Court of Appeals of Georgia

A17A2082. BOWMAN v. BOWMAN.

MILLER, Presiding Judge.

In this case, we must determine whether a Georgia trial court had jurisdiction over a petition requesting custody of two minor children under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-61.[1] While visiting family in Georgia from Michigan, Chelsey Bowman filed a complaint seeking custody of her minor children from her husband and the children's father, Luke Bowman. The trial court concluded that it had jurisdiction over the petition pursuant to the UCCJEA. Luke sought interlocutory review, which this Court granted. We now conclude that the trial court erred in finding that jurisdiction was proper here.

---

[1] Every state has adopted the UCCJEA.

Accordingly, we reverse the trial court's order and remand for the trial court to dismiss the petition for lack of jurisdiction.

We review a question of subject-matter jurisdiction de novo. *Kogel v. Kogel*, 337 Ga. App. 137, 140 (786 SE2d 518) (2016). So viewed, we begin with a recounting of this case's complicated procedural history. Luke and Chelsey married in Georgia in 2009. Their son was born in Georgia in 2011. In 2012, the family moved to Michigan, and their daughter was born there in 2013. For approximately one year, the family moved around Michigan. They then moved to Wisconsin for Luke's job, and they remained there for a year. When Luke's job ended, he moved to Indiana, and Chelsey remained in Wisconsin until the lease on their home terminated. At that time, Chelsey and the children returned to Michigan in October 2015, where they stayed with different members of Luke's family for one month.

In November 2015, Luke and Chelsey brought the children to Georgia to visit Chelsey's family for Thanksgiving. The parties agree that the plan was for Chelsey and the children to return to the midwest after the holiday.[2] However, after Luke left Georgia, Chelsey became concerned that he had engaged in an extra-marital affair,

_____

[2] The parties dispute whether the plan was to return to Michigan or to move to Indiana.

2

and she immediately filed an ex parte motion in Georgia for custody of the children. In December 2015, the trial court granted temporary custody to Chelsey.

Luke moved to vacate the ex parte order, arguing that the Georgia court lacked jurisdiction to enter the custody award because the children had no significant connection to Georgia. Chelsey opposed the motion, and both parties submitted numerous affidavits to show the ties the children had in Michigan and Georgia.

The trial court held a hearing in Georgia in January 2016 to address the issue of jurisdiction. Shortly before that hearing, Luke filed for divorce in Michigan.

In February 2016, a Michigan trial court also held a hearing to determine which state was the proper jurisdiction for the custody dispute. The Michigan court heard testimony from Luke and Chelsey, as well as Luke's mother. After considering the family ties in each state, the Michigan court concluded that there was no basis for that state to exercise jurisdiction. Luke filed an appeal of the Michigan court's decision and also moved to dismiss the Georgia trial court's order. When the case returned to the trial court in Georgia, the trial court held the case in abeyance pending the outcome of the Michigan appeal.[3]

---

[3] In June 2016, the Georgia trial court held a hearing to modify custody, again noting that a final determination was being held in abeyance pending a decision in the Michigan appeal. As a result of this hearing, Luke was permitted to take the children

In October 2016, the Michigan Court of Appeals issued its decision upholding the determination that jurisdiction was proper in Georgia, but remanding because the trial court failed to communicate with the Georgia court before reaching its decision. The parties then returned to court in Georgia in December 2016, at which time the trial court spoke with the judge in Michigan and they agreed that jurisdiction was proper in Georgia. During that hearing, the parties stipulated that neither Michigan nor Georgia was the children's "home state," under the UCCJEA, and both the Michigan and Georgia judges agreed that the children had a significant connection to both states. The Georgia trial court also considered whether Chelsey had improperly filed the ex parte motion for custody and found that she had not done so. The trial court then reinstated its ruling finding that it had jurisdiction under OCGA § 19-9-61 (a) (2) and (a) (4), and made a blanket statement that the children had a significant connection with the state that warranted the exercise of jurisdiction. This interlocutory appeal followed.[4]

to Michigan during the summer vacation.

[4] This Court granted Luke's application for interlocutory appeal. We note, however, that Luke could have brought a direct appeal from the trial court's order under OCGA § 5-6-34 (11) (permitting a direct appeal of "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or

4

In three interrelated enumerations or error, Luke argues that the trial court erred in exercising jurisdiction over the custody dispute because (1) the ex parte order failed to meet the standard for conferring emergency jurisdiction; (2) the trial court ignored evidence of Chelsey's misconduct in filing the emergency petition; and (3) the trial court failed to consider which state had the more significant connection to the children. After a thorough review of the record, we find that the trial court failed to make the requisite factual findings before concluding that it had jurisdiction.

1. Luke first argues that the trial court erred in exercising emergency jurisdiction because there was no basis to grant such relief under OCGA § 19-9-64. We find no reversible error.

(a) Under OCGA § 19-9-64 (a), the trial court may exercise emergency jurisdiction when "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse." Generally, to exercise jurisdiction under this statute, there must be an immediate

orders."). Here, the issue involved the trial court's jurisdiction over the custody dispute and order awarding temporary custody; therefore, this case could have been brought as a direct appeal. See *Voyles v. Volyes*, 301 Ga. 44, 45-46 (799 SE2d 160) (2017) (Court looks to the "issue raised on appeal" to determine whether a party could bring a direct appeal).

5

danger of harm or abuse. See *Prabnarong v. Oudomhack*, 334 Ga. App. 723, 726 (780 SE2d 393) (2015).

Alternatively, under the UCCJEA, a trial court has jurisdiction to make an "initial custody determination" if certain jurisdictional requirements are met. OCGA § 19-9-61 (a). The term "initial determination" is defined as "the first child custody determination concerning a particular child." See OCGA § 19-9-41 (8).

Thus, even if there was no basis for emergency jurisdiction under § 19-9-64, given that no other state had a pending custody petition before it, the trial court properly considered whether it had jurisdiction under OCGA § 19-9-61. Any error in considering the emergency custody motion is rendered moot by the trial court's subsequent ruling on the jurisdictional question. *Delgado v. Combs*, 314 Ga. App. 419, 421 (1) (724 SE2d 436) (2012).

(b) Luke argues, however, that Chelsey's alleged misconduct in invoking emergency jurisdiction required the trial court to decline to exercise jurisdiction regardless of whether the jurisdictional prerequisites of the UCCJEA were met and that the trial court erred in failing to consider evidence of her misconduct.

Here, the trial court found that Chelsey did not engage in any misconduct, and we must defer to that factual finding. *Parke v. Fant*, 260 Ga. App. 84, 86 (2) (578

6

SE2d 896) (2003). Moreover, our conclusion in Division 1 (a) that the Georgia trial court could consider the initial custody determination regardless of the emergency petition essentially renders Chesley's conduct irrelevant, and we need not consider whether the trial court reviewed Luke's evidence of Chesley's alleged misconduct. Furthermore, even if there had been some misconduct, the UCCJEA does not *require* a court to decline to exercise jurisdiction where, as here, both the Michigan court and the Georgia court expressly determined that jurisdiction in Georgia was the more appropriate and convenient forum.[5] Therefore, assuming that Georgia had jurisdiction, the trial court was not required to decline to exercise that jurisdiction.

2. We thus turn to whether the trial court properly exercised jurisdiction under the UCCJEA after finding that the children had more significant connections to Georgia than to Michigan. We now conclude that the trial court erred.

---

[5] Under OCGA § 19-9-68 (a) (2), where a court has jurisdiction because a party has engaged in unjustifiable misconduct, the court "shall decline to exercise its jurisdiction unless . . . [a] court of the state otherwise having jurisdiction . . . determines that this state is a more appropriate forum." Additionally, under OCGA § 19-9-67, a court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."

7

(a) The UCCJEA sets forth the circumstances in which a court of this state has jurisdiction to make an initial custody determination. The purposes of the UCCJEA are to

> (1) avoid jurisdictional competition, (2) promote cooperation between courts of different states, (3) discourage use of the interstate system to continue custodial controversies, (4) deter child abductions, (5) avoid relitigation of custody decisions in other states, and (6) facilitate enforcement of decrees by other states.

(Citation omitted.) *Delgado*, supra, 314 Ga. App. at 425 (1), n. 10. To these ends, OCGA § 19-9-61 provides,

> (a) Except as otherwise provided in Code Section 19-9-64 [providing for emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more

8

appropriate forum under Code Section 19-9-67 [setting out factors for inconvenient forum] or 19-9-68 [where jurisdiction is wrongfully obtained] and:

(A) The child and the child's parents, or the child and at least one

parent or a person acting as a parent, have a significant connection

with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the

child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Code Section 19-9-67 or 19-9-68; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3) of this subsection.

(b) Subsection (a) of this Code section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

A "child custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with

9

respect to a child[,]" and includes a "permanent, temporary, initial, and modification order." See OCGA § 19-9-41 (3).

Jurisdiction under the UCCJEA is heavily dependent on the question of whether Georgia is the child's "home state." See OCGA § 19-9-61; *Bellew v. Larese*, 288 Ga. 495, 498 (706 SE2d 78) (2011). The term "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." OCGA § 19-9-41 (7). Where, as here, neither state involved qualifies as a "home state,"[6] however, the court may nevertheless obtain jurisdiction under the other provisions set forth in § 19-9-61 (a). As is relevant here, we look to § 19-9-61 (a) (2), which provides that Georgia may retain jurisdiction to determine custody issues if

> (A) The child and the child's parents, or *the child* and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

---

[6] As noted, the parties stipulated that neither Georgia nor Michigan was the home state and that the children had lived in Georgia for less than 30 days before Chelsey sought custody. Accordingly, there was no "home state," and jurisdiction did not vest under § 19-9-61 (a) (1).

OCGA § 19-9-61 (a) (2); see also *Thompson v. Thompson*, 241 Ga. App. 616, 617-618 (526 SE2d 576) (1999). Given the "relative dearth of Georgia law on the subject," we may look to case law in other jurisdictions. *Delgado*, supra, 314 Ga. App. at 425.

"In determining whether these requirements are met, the trial court considers the situation at the time the initial custody application is filed." See *Khawam v. Wolfe*, 84 A3d 558, 563 (II) (D.C. App. 2014); *Baker v. Baker*, 25 So3d 470, 475 (Ala. Civ. Ct. App. 2009). See also UCCJEA § 202, comment ("[j]urisdiction attaches at the commencement of a proceeding."), and *Plummer v. Plummer*, 342 Ga. App. 605, 607, n. 8 (804 SE2d 179) (2017). Conduct occurring after the petition is filed does not serve to create a "substantial connection" within a state.[7] See *Wylie v. Blatchley*, 237 Ga. App. 563, 564 (2) (515 SE2d 855) (1999) (considering children's connection to the state *prior to* the mother's removal of the children). Additionally, although the

---

[7] We note that our courts have not established what connections are sufficient, and other states are split on whether to broadly construe the term "significant connection." See *White v. Harrison-White*, 280 Mich. App. 383, 390-393 (III) (760 NW2d 691) (2008) (discussing split of authority). In at least one case, we held that the trial court should consider where the children have lived throughout the year, where other members of the extended family are located, along with friends, and whether there is evidence regarding the children's past and future activities, relationships, and care. *Mock v. Smith*, 233 Ga. App. 36, 37 (503 SE2d 319) (1998).

11

jurisdictional determination is highly fact-sensitive, *Parke*, supra, 260 Ga. App. at 86 (2), where the question before this Court is a legal one, we apply de novo review.[8]

(b) Viewing only the connections with Georgia that existed at the time the custody petition was filed, *Khawam*, supra, 84 A3d at 563 (II); *Baker*, supra, 25 So3d at 475, we must conclude that the trial court erred in exercising jurisdiction. "[W]e construe [the UCCJEA] liberally so as to carry out the remedial aspects of the law. One of the remedial aspects is assuring that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection."[9] (Punctuation omitted; footnote supplied.) *Parke*, supra, 260 Ga.

---

[8] Our courts have never specifically addressed the standard of review applicable to reviewing the "significant connection" analysis under the UCCJEA. In this case, the facts are undisputed and we are left to ascertain the legal implication of those facts, an issue appropriate for de novo review. We note that other state courts are split on the applicable standard of review for the "significant connection" analysis. See, e.g., *Steven v. Nicole*, 308 P3d 875, 879 (Alaska 2013) (applying abuse of discretion standard); *Khawam*, supra, 84 A3d at 563 (II) (de novo review); *In re Custody of N. G. H.*, 963 P2d 1275 ¶ 13 (Mont. 1998) (clearly erroneous standard of review). Because this is a legal determination in this case, we are persuaded that the proper standard of review is de novo.

[9] At a hearing, in which the trial court communicated with the Michigan trial court, Luke's counsel acknowledged that there was a significant connection with both Michigan and Georgia, but argued that the contacts between Georgia and the children had not been significant at the time the custody petition was filed. In its order, the trial court specifically identified the parties' stipulations, which did not include counsel's statement that there was a significant connection to Georgia. Viewing

12

App. at 86 (2). In considering the connection, we look to the state in which there is significant evidence regarding the children's "care, protection, training, and personal relationships." *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 402 (2) (436 SE2d 700) (1993).

Here, the undisputed facts showed that, although Chelsey grew up in Georgia and her family continued to live here, and that Chelsey had returned to Georgia for less than 30 days before filing her petition for custody. Moreover, the only ties between the state of Georgia and these children at that time were: (1) one of the children was born here; (2) grandparents and other family lived here; and (3) the children had been to Georgia to visit their grandparents in the past.[10] The children's mere presence in Georgia, along with their mother's, is insufficient to establish the

counsel's statements in context, we decline to treat counsel's statement as a stipulation tat Georgia had a significant connection. Thereafter, the Georgia court made a blanket statement that the children had a significant connection to Georgia, but the court made no factual findings to support this conclusion. The Michigan trial court made factual findings regarding the children's connections to Georgia, and, although the Georgia trial court referenced the Michigan trial court's order, it did not explicitly adopt any of those findings.

[10] The record contains numerous affidavits from family and friends of both parties. Although these documents may be relevant to the ultimate custody determination, they do not establish the significant connection necessary to confer the Georgia court with jurisdiction over the custody petition at the time the petition was filed.

significant connections required for the courts of this state to exercise jurisdiction. See *Lightfoot*, supra, 210 Ga. App. at 403 (2).

Indeed, exercising jurisdiction here tends to reward the very type of forum shopping the statute was designed to prevent. See *Delgado*, supra, 314 Ga. App. at 425 (1), n. 10. We therefore conclude that due to the limited connections between the children and Georgia at the time the petition was filed, the trial court erred in denying Luke's motion to dismiss for lack of jurisdiction.

(c) We note that the trial court also concluded that it retained jurisdiction under OCGA § 19-9-61 (a) (4) because of the Michigan court's decision to decline to exercise jurisdiction. At the time the petition for custody was filed, however, subsection (a) (4) would not have applied because Michigan *could* have exercised jurisdiction due to the connections the children had to that state, had it elected to do so. Moreover, at the time the Georgia court was faced with the jurisdictional question – i.e. when the petition was filed – Michigan had not yet declined to exercise jurisdiction, and thus, subsection (a) (4) provides no avenue for exercising jurisdiction. We cannot accept jurisdiction under the circular reasoning that the Michigan court declined to exercise jurisdiction when the Michigan court did so

14

based on our state court's decision to exercise jurisdiction. This type of "bootstrapping" is exactly the type of behavior the UCCJEA is intended to prevent.

Because no provision in OCGA § 19-9-61 (a) authorized the Georgia trial court to exercise jurisdiction over this custody dispute, we must reverse the trial court's order and remand the case to be dismissed for lack of jurisdiction.

*Judgment reversed and case remanded. Reese, J., concurs. Doyle, P. J., concurs in Division 1 and dissents in Division 2.\**

**\* DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A17A2082. BOWMAN v. BOWMAN.

D<small>OYLE</small>, Presiding Judge.

While I fully concur in Division 1, I disagree with the majority's decision in Division 2 to remand the case for further factual findings on whether "the child[ren] and the child[ren]'s parents, or the child[ren] and at least one parent . . . have a significant connection with this state other than mere physical presence" pursuant to OCGA § 19-9-61 (a) (2) (A). Instead, I would affirm the trial court's exercise of jurisdiction under the UCCJEA. Therefore, I respectfully dissent to Division 2.

The father conceded that there is a "significant connection to both [Michigan and Georgia]" and that the children "also have a significant connection to Georgia." The father does not dispute that the mother has a significant connection to Georgia,

and there is ample evidence in the record — through her affidavit , the affidavits of Georgia relatives and friends detailing the children's connections to Georgia, , and testimony before the Michigan trial court judge (which was admitted into evidence and adopted by the Georgia trial court judge and incorporated into its order) — that support a finding that the children and at least one parent had significant connections with the State of Georgia when the petition was filed.

Further, I agree with the reasoning of the Michigan appellate court's opinion in this case regarding the term "significant connection" in the context of an initial custody determination requiring that "a child and at least one parent must have an 'important and meaningful relationship to the state' that is based on more than mere physical presence." The Michigan appellate court noted that in *White v. Harrison-White*,[1] another Michigan case governing the exercise of exclusive, continuing jurisdiction, "significant connection" "exists where one parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state."[2]

---

[1] 760 NW2d 691 (Mich. App. 2008).

[2] Id. at 698 (III).

Here, a de novo review of the record shows that as of the date the petition was filed, the mother had decided to reside in Georgia where she was born, had relatives, was married, and gave birth to the parties' first child; she had always maintained a meaningful relationship with the children; and she was exercising her parenting time in Georgia. Based on this evidence, I see no reason to remand for the trial court to make further factual findings.[3] Instead, I would affirm the trial court's exercise of jurisdiction under the UCCJEA.

---

[3] In *Henderson v. Justice*, 223 Ga. App. 591, 593-94 (478 SE2d 434) (1996), the case the majority cites for the proposition that a court cannot exercise jurisdiction under the UCCJEA without making requisite factual findings, the trial court completely failed to address in its written order or in its oral comments at the modification hearing whether an Alabama court had lost or declined to exercise jurisdiction and thus did not make the appropriate factual determinations under the Parental Kidnapping Prevention Act, 28 USC §1738A. Here, by contrast, the trial court incorporated all of the evidence and testimony it relied upon and specifically found that the requirements of OCGA § 19-9-61 (a) (2) had been met.