IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MADISON C., *Petitioner*,

*v.*

THE HONORABLE SUZANNE MARWIL, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

and

ARIZONA DEPARTMENT OF CHILD SAFETY, *Real Party in Interest.*

No. 1 CA-SA 22-0202
FILED 5-11-2023

Appeal from the Superior Court in Maricopa County
No. JD42176
The Honorable Suzanne Marwil, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Public Advocate, Phoenix
By Natalie Jones
*Counsel for Petitioner*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Co-Counsel for Real Party in Interest*

The Huff Law Firm, Tucson
By Daniel R. Huff & Laura J. Huff
*Co-Counsel for Real Party in Interest*

---

**OPINION**

Judge Angela K. Paton delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**P A T O N**, Judge:

¶1        Madison C. ("Mother") filed this special action challenging the superior court's exercise of temporary emergency jurisdiction and temporary custody over her child ("the Child") under Arizona's enactment of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See* A.R.S. §§ 25-1001 to -1067.  In this Opinion, we clarify the UCCJEA's requirement that a party seeking to invoke the superior court's temporary emergency jurisdiction must prove that a child is being subjected to or threatened with mistreatment or abuse.   Because the Arizona Department of Child Safety ("DCS") presented insufficient evidence that the Child was "subjected to or threatened with mistreatment or abuse" by Mother, *see* A.R.S. § 25-1034(A), to support the court's exercise of temporary emergency jurisdiction, we accept special action jurisdiction and grant relief.  We vacate the court's minute entry exercising temporary emergency jurisdiction.

**FACTS AND PROCEDURAL HISTORY**

¶2        Mother and the Child are Arkansas residents.  In late July 2022, Mother sent the Child to stay with Child's maternal grandmother ("Grandmother") in Arizona, intending to join her shortly thereafter.

¶3        On August 10, the Arkansas Department of Health and Human Services ("ADHHS") received a report alleging that Mother abused drugs, her home was unsafe for the Child, and the Child had inadequate food and was being educationally neglected.  That same day, an ADHHS investigator visited Mother.  Mother lied about who she was and denied the investigator access to her property.  About three weeks later, an Arkansas court granted ADHHS's request for an order permitting the agency to access Mother's property.

2

¶4            When the ADHHS investigator and police officers returned to the property two days later and presented Mother with the court order, Mother cooperated.  ADHHS asked Mother to provide a urine sample—even though not required by the court order.  Mother tried but was unable to produce one.  She offered to go to another testing location to provide a urine sample but ADHHS—per department policy—declined to facilitate another test.

¶5            Mother told ADHHS during the visit that the Child was with Grandmother in Arizona and ADHHS asked DCS to conduct a courtesy wellness check on the Child.  DCS did so that same day, and, although Grandmother did not permit DCS to enter the home, DCS saw the Child, who appeared to be safe.  DCS informed ADHHS that there were no concerns about the Child's safety.

¶6            Meanwhile, in Arkansas, the investigator examined Mother's home and found adequate housing and food and no evidence of drug use.  Consequently, ADHHS closed the investigation, and found the report of abuse or neglect unsubstantiated.

¶7            One week later, the Child, Grandmother, and a third-party driver were involved in a car accident in Arizona.  Police found what they characterized as a "meth pipe" in Grandmother's jacket, and "four bags, a little bit bigger than quarter-dollar size," containing methamphetamine in the car.  Based on the drugs found in the car and Grandmother's hospitalization following the accident, DCS took the Child into custody.  The court granted DCS's request for temporary custody of the Child the next day, based on allegations that Mother abused substances and failed to properly care for the Child by leaving the Child in Grandmother's care.

¶8            Also on the next day, DCS called Mother while she was traveling to Arizona.  When Mother arrived in Arizona, DCS asked her to complete a urinalysis and hair follicle test.  The drug testing provider ("PSI") returned documentation indicating Mother was unable to produce a urine sample, and on the advice of her attorney, Mother declined a hair follicle test.  DCS filed a preliminary report with the court, alleging that Mother was "very shakey [sic] and fidgety" and "had scabs and sores on her legs."

¶9            The superior court held an evidentiary hearing in late September regarding temporary custody and whether to exercise temporary emergency jurisdiction pursuant to Section 25-1034(A), given that the Child had not been in Arizona for six consecutive months.

Mother's counsel and the Child's counsel objected to the court's proposed exercise of jurisdiction.

¶10        The court heard testimony from the ADHHS and DCS investigators.  The DCS investigator admitted that, as of the date of the hearing, DCS's only concern "[was] the unknown of substance abuse[.]"  The DCS investigator testified that Mother appeared surprised when informed of evidence of Grandmother's possession of drug paraphernalia and the methamphetamine found in the car.

¶11        After the presentation of evidence, Mother moved for judgment as a matter of law, arguing insufficient evidence supported a finding that she either abused substances or knew that Grandmother was an unsafe caregiver.  She argued that the court's exercise of jurisdiction was inappropriate because the Child was not at immediate risk of abuse or mistreatment if returned to her care.  The Child's counsel joined in Mother's motion.

¶12        The court found it had temporary emergency jurisdiction over the Child and probable cause that temporary custody of the Child "remain[ed] necessary to prevent the Child from being subject to further abuse or neglect, such as being exposed to methamphetamines or under the care of a substance exposed caregiver, whether that be either her parents or [Grandmother]."  The court determined it had "jurisdiction to order that Mother undergo a drug test so we can know whether there's an ongoing concern over drugs for Mother."

¶13        This timely special action petition by Mother followed.  After Mother filed this petition, she submitted a negative urinalysis, and the superior court dismissed the temporary custody order at the State's request at a hearing on October 31.

## DISCUSSION

I.     **We accept special action jurisdiction despite the dismissal of the temporary custody order.**

¶14        The decision to accept or deny special action jurisdiction is discretionary.  *See* Ariz. R.P. Spec. Act. 1(a) (special action jurisdiction is appropriate when a party has no "equally plain, speedy, and adequate remedy by appeal"); Ariz. R.P. Spec. Act. 3(b), (c) (providing for special action jurisdiction when a respondent party "has proceeded . . . without or in excess of jurisdiction or legal authority" or has made "a determination [that is] . . . an abuse of discretion").

¶15        This court may accept jurisdiction when the matter involves a purely legal question of first impression, is of statewide importance, and is likely to recur. *See State ex rel. Adel v. Covil*, 252 Ariz. 40, 41, ¶ 2 (App. 2021). If the matter "can be resolved on legal principles," this militates in favor of accepting jurisdiction. *Ariz. Dep't of Econ. Sec. v. Super. Ct.*, 171 Ariz. 688, 690 (App. 1992).

¶16        After filing her special action petition, Mother submitted a negative urinalysis. At the State's request, the superior court dismissed the temporary custody order, returning the Child to Mother's care. The State now argues we should dismiss this special action as moot. While we ordinarily decline to review a question when its resolution "will have no effect on the parties," this is a prudential concern rather than a jurisdictional bar. *Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012).

¶17        Whether a superior court errs by exercising temporary emergency jurisdiction over a child is an issue capable of repetition yet likely to evade appellate review, meaning special action jurisdiction is proper here. *Id.* at 617, ¶ 7. Specifically, in this case, the short timeline from the initial investigation to dismissal described above suggests that a temporary exercise of this type will likely evade appellate review in the ordinary course. Consequently, despite the dismissal of the underlying dependency action, we accept special action jurisdiction to address an issue of statewide importance: the findings necessary to establish temporary emergency jurisdiction and award temporary custody of a child under the UCCJEA. *See* A.R.S. § 25-1034(A).

**II.    The superior court must apply Section 25-1034(A) when the Child's home state is not Arizona, even in the absence of parallel court proceedings.**

¶18        We review the superior court's exercise of jurisdiction and its interpretation of relevant statutes de novo. *Stapert v. Ariz. Bd. of Psych. Exam'rs*, 210 Ariz. 177, 179, ¶ 7 (App. 2005). Jurisdiction is conferred directly by the Arizona Constitution or by statute. *See generally* Ariz. Const. art. 6, § 14; *Schoenberger v. Bd. of Adjustment of City of Phx.*, 124 Ariz. 528, 530 (1980).

¶19        The UCCJEA is the requisite jurisdictional basis for making an initial custody determination. *See* A.R.S. §§ 25-1002(3), 25-1031(A), (B). While home state jurisdiction is the typical ground for jurisdiction, *see* Section 25-1031(A)(1), (2)-(4), temporary emergency jurisdiction may be

appropriate where necessary to protect a child in exceptional, enumerated circumstances. A.R.S. § 25-1034.

¶20 Section 25-1034(A) provides the basis for jurisdiction over a child whose home state is not Arizona in cases where "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." The UCCJEA and the jurisdictional prerequisites under Section 25-1034(A) apply even absent a court proceeding or prior custody determination in another state. *See Sha'quia G. v. Dep't of Child Safety*, 251 Ariz. 212, 215, ¶ 13 (App. 2021) (affirming an Arizona court's exercising temporary emergency jurisdiction in the absence of a prior custody determination in the children's foreign home state); A.R.S. § 25-1034(B), (D) (permitting the exercise of temporary emergency jurisdiction regardless of the status of proceedings or prior custody determinations in other states).

¶21 Both the requirements to confer with another court and requirements to exercise jurisdiction are mandatory where the statute so requires. *See Sha'quia G.*, 251 Ariz. at 215, ¶¶ 13-14. When Arizona is not the child's home state, a court may "make an initial child custody determination *only*" in circumstances specified by statute. A.R.S. § 25-1031(A) (emphasis added); *see also* A.R.S. § 25-1031(A)(2)-(4) (providing for other circumstances short of an emergency). Section 25-1034 is an exception to this general rule, expanding jurisdiction only in specific circumstances, *see Welch-Doden v. Roberts*, 202 Ariz. 201, 209-10, ¶¶ 39-40 (App. 2002) (interpreting Section 25-1031(A), such as in cases of abandonment or when "it is necessary in an emergency to protect the child . . . subjected to or threatened with mistreatment or abuse." A.R.S. § 25-1034(A)).

¶22 But neither Section 25-1031(A) nor Section 25-1034(A) is limited to situations where a competing court order or proceedings in another jurisdiction exist. A court must apply these statutes in cases where it is asked to exercise jurisdiction over a child whose home state is not Arizona.

¶23 Neither party disputes that the Child's home state is Arkansas, not Arizona. Consequently, to acquire jurisdiction absent Section 25-1031 findings, the superior court had to apply Section 25-1034(A).

### III. The superior court lacked reasonable evidence to support an exercise of jurisdiction under Section 25-1034(A).

¶24  The superior court could exercise temporary emergency jurisdiction over the Child in this case only if the facts demonstrated an emergency in which "the child . . . is subjected to or threatened with mistreatment or abuse." *See* A.R.S. § 25-1034(A). We will affirm a superior court's exercise of temporary emergency jurisdiction "if reasonable evidence and inferences" support the factual basis. *See Holly C. v. Tohono O'odham Nation*, 247 Ariz. 495, 505, ¶ 26 (App. 2019). But we are mindful, in keeping with our duty to harmonize our interpretation of uniform laws with other jurisdictions, that exercise of temporary emergency jurisdiction is "extraordinary" and "reserved for extraordinary circumstances." UCCJEA § 204 cmt. (Unif. L. Comm'n 1997) (quoting Unif. Child Custody Jurisdiction Act § 3 cmt. (Unif. L. Comm'n 1968)).

¶25  The superior court conflated the evidentiary standard for a dependency, which references and considers "neglect" under Section 8-201(25), with the "mistreatment or abuse" standard under Section 25-1034(A). *See also* UCCJEA § 204(a) (Unif. L. Comm'n 1997). As commentary to UCCJEA Section 204 explains, the Uniform Law Commission intentionally omitted "neglect" as a basis for exercising temporary emergency jurisdiction. UCCJEA § 204 cmt. (Unif. L. Comm'n 1997); *see also May v. Ellis*, 208 Ariz. 229, 232, ¶ 12 (2004) ("[C]ommentary to . . . a uniform act is highly persuasive.") (quoting *UNUM Life Ins. Co. of Am.*, 200 Ariz. 332, 515 ¶ 25 (2001)). Arizona courts interpret uniform laws consistently with sister jurisdictions. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 180 Ariz. 148, 154 (1994). Other courts have found that an immediate risk of harm to the child upon return to the parent is necessary for an emergency finding, and we find their interpretations of the UCCJEA persuasive. *See e.g.*, *Bowman v. Bowman*, 811 S.E.2d 103, 106 (Ga. Ct. App. 2018) ("Generally, to exercise jurisdiction under this statute, there must be an immediate danger of harm or abuse."); *In re Cristian I.*, 224 Cal. App. 4th 1088, 1097 (2014) ("An 'emergency' exists when there is an immediate risk of danger to the child if he or she is returned to a parent.").

¶26  Of course, conduct that constitutes neglect may also qualify as mistreatment or abuse; such terms are not mutually exclusive, and the Uniform Law Commission specifically omitted neglect due to its elastic ability to encompass *more* conduct than abuse and mistreatment. *See* UCCJEA § 204 cmt. (Unif. L. Comm'n 1997). We do not mean to say that any specific conduct by a parent is excluded from consideration under Section 25-1034(A). While no statute or controlling case law defines

"mistreatment," the dictionary definition suggests that it—like abuse—is characterized based on the direct impact of the behavior of the parent on the child, in a manner constituting an emergency. *Compare* A.R.S. § 8-201(25) ("neglect") *with* -201(2) ("abuse") and *Mistreat*, Random House Webster's Unabridged Dictionary (2d ed. 2001) ("to treat badly or abusively"). But while we cannot say conduct that constitutes neglect could never rise to the level of "mistreatment or abuse," prior conduct constituting neglect (such as allegations of drug use standing alone) that does not also establish an immediate risk of danger to the child upon return to the parent does not justify exercise of temporary emergency jurisdiction.

¶27 With Mother in Arizona seeking to care for her Child, the question for the court was whether the Child would be "subjected to or threatened with mistreatment or abuse" upon return to Mother's care. *See* A.R.S. § 25-1034(A). DCS presented evidence supporting its suspicion of both drug abuse by Mother and that Grandmother was potentially an unsafe caregiver, but that evidence was insufficient to show that returning the Child to Mother's care posed any risk of immediate danger. Therefore, no ongoing emergency was proven. On these facts, the superior court erred by exercising temporary emergency jurisdiction.

## CONCLUSION

¶28 We vacate the superior court's minute entry exercising temporary emergency jurisdiction over the Child.



AMY M. WOOD • Clerk of the Court
FILED: AA