**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 14, 2020**

# In the Court of Appeals of Georgia

A20A1109. IN RE ESTATE OF HANSON.

RICKMAN, Judge.

In the second appearance of this case before this Court, Kimberly Babbitt again appeals a Georgia probate court's determination that it had jurisdiction to enter orders for a nontemporary guardianship and a conservatorship over non-Georgia property of Kevin Hanson, a Florida resident, her life partner and the father of her three children, who received a traumatic brain injury when a bridge collapsed in Miami. See *In re Estate of Hanson*, 353 Ga. App. 61 (834 SE2d 615) (2019). In a case of first impression under the Uniform Adult Guardianship and Conservatorship Proceedings Jurisdiction Act (the "UAGCPJA"), see OCGA §§ 29-11-1 et seq., we hold that the probate court plainly erred in concluding that it had such jurisdiction. We therefore reverse and remand with direction.

"[W]hether a trial court lacked subject-matter jurisdiction is an issue of law that we review de novo for plain legal error." (Citation and punctuation omitted.) *Delgado v. Combs*, 314 Ga. App. 419, 425-426 (1) (724 SE2d 436) (2012).

It is undisputed that at the time then 38-year-old Kevin was injured, he and Babbitt lived together, unmarried, in Hillsborough County, Florida with Kevin's four children[1]; Kevin's parents — the Hansons — also resided in Florida.

With that background, the basic facts, as set forth in the earlier appeal and as supplemented herein, show the following:

> Kevin . . . was catastrophically injured in Miami on March 15, 2018. Kevin was treated first in Florida and was then transported to Atlanta for treatment at the Shepherd Center [on April 3, 2018]. On June 26, 2018, while Kevin remained in Georgia, [Kevin's] parents filed a petition in the Probate Court of Fulton County seeking to be appointed as Kevin's emergency co-guardians and co-conservators. The trial court granted the petition on June 29, 2018, to last "for 60 days, or until the effective date of the appointment of a permanent guardian/conservator."

*Hanson*, 353 Ga. App. at 61. The Hansons did not notify Babbitt or the minor children of the emergency petition.

---

[1] In their verified emergency petition, Kevin's parents averred that Kevin had four minor children, three of whom were born to Babbitt.

2

On July 3, 2018, the Hansons filed a petition seeking to be appointed permanent co-guardians for Kevin and co-conservators of his property (hereinafter sometimes referred to as the "petition for permanent orders"). One week later, Babbitt and the children moved to intervene in the probate court proceedings, seeking to set aside the court's emergency order and to dismiss the emergency petition. The probate court denied the motion. Prior to the expiration of the first emergency appointment, the Hansons filed a second emergency petition.

Babbitt and the children moved to dismiss the petition for permanent orders arguing, in part, that under the UAGCPJA,[2] jurisdiction belonged in Florida. The probate court denied the motion. Babbitt also filed her own petition for appointment of an emergency guardian and/or emergency conservator, and Babbitt and the children filed a caveat to the second emergency petition, asserting improper jurisdiction based in part on the ground that a petition for guardianship and conservatorship was pending in Hillsborough County, Florida. Following a hearing, the probate court dismissed Babbitt's caveat for lack of standing, dismissed her emergency petition, and granted the Hansons' second emergency motion.

---

[2] Article 2 of the UAGCPJA applies to "guardianship proceedings . . . begun on or after on July 1, 2016." OCGA § 29-11-42 (a).

3

On October 3, 2018, Kevin was transported back to Florida for additional medical treatment in Sarasota. Nine days later, the probate court held a hearing on the petition for permanent orders. On October 15, 2018, the trial court entered an order naming the Hansons as the permanent co-guardians of Kevin and co-conservators of his property, including property located in Florida; Babbitt appealed and argued, among other things, that the trial court lacked jurisdiction. On the initial appeal, this Court held that the probate court failed to consider the factors necessary to establish that it had jurisdiction under the UAGCPJA; we therefore vacated the court's decision and remanded the case for additional findings. *Hanson*, 353 Ga. App. at 62 (1).

On remand, the probate court again found that it had jurisdiction and issued a new order again naming the Hansons as the permanent co-guardians of Kevin and co-conservators of his property, including property located in Florida.[3] Babbitt again

---

[3] The probate court also noted that on December 4, 2018, six weeks *after* it entered the first final order, the probate judge spoke via telephone with the chief judge of the probate division, Sarasota County, Florida. The Florida judge "indicated that he would dismiss the proceeding before his Court due to [there] being a valid guardianship in place in Georgia since there could not be two." Thereafter, however, the Hansons submitted to the Georgia court a copy of that dismissal, which stated that the Florida court dismissed the proceedings for lack of jurisdiction based on the full faith and credit provision of the United States Constitution.

4

appeals, asserting, among other things, that the court erred in concluding that it had jurisdiction and in denying the motion to intervene.[4]

1. We first hereby deny the Hansons' motion to dismiss Babbitt's appeal for lack of standing to appeal. At a minimum, denial of a motion to intervene is appealable. See *In the Interest of J. M. T.*, 275 Ga. App. 526, 527 (621 SE2d 535) (2005) (denial of intervention is appealable); *Kipp v. Rawson*, 193 Ga. App. 532, 534 (4) (a) (388 SE2d 409) (1989) (denial of intervention in a guardianship proceeding is appealable). Babbitt also filed her own petition for a guardianship,[5] which made her a party to the proceedings from which she had a right to appeal a final judgment. See OCGA § 29-4-70 (a) (petitioner for guardianship has a right to appeal); see also *Kipp*, 193 Ga. App. at 535 (4) (a) (denial of intervention reviewable as part of the timely review of a subsequent final judgment); compare *Twitty v. Akers*, 218 Ga. App. 467, 468 (1) (462 SE2d 418) (1995) (individuals who did not petition for guardianship had no standing to appeal probate court's decision). Finally, this Court considered Babbitt's earlier appeal over the Hansons' objection to her standing.

---

[4] The Georgia probate court appointed the Hansons as emergency co-guardians pending this appeal.

[5] "Any interested person, including the proposed ward, may file a petition for the appointment of a guardian." OCGA § 29-4-10 (a).

2. Babbitt asserts that the probate court erred by finding that it had jurisdiction under the UAGCPJA. We agree.

The UAGCPJA is "a slightly revised version of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act" (the "Uniform Act"). Radford, Ga. Guardianship and Conservatorship § 1:30 (2019). Under the well-established rules of statutory construction,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *Johnson v. State*, _ Ga. _ (839 SE2d 521) (2020).

(a) Babbitt first challenges the probate court's reliance on OCGA § 29-4-10 (a) and 29-5-10 (a),[6] statutes not found in the UAGCPJA. We agree that the UAGCPJA alone governs the probate court's jurisdiction.

In enacting the UAGCPJA, the legislature made clear that Article 2 of that act "provides the exclusive jurisdictional basis for a court of this state to appoint a guardian or issue a conservatorship order for an adult." OCGA § 29-11-11. This language is clear and susceptible to only one meaning. Furthermore, OCGA §§ 29-4-10 (a) and 29-5-10 (a) pertain to the question of venue, not jurisdiction. See generally *Hoesch America, Inc. v. Dai Yang Metal Co.*, 217 Ga. App. 845, 847 (1) (459 SE2d 187) (1995) ("Jurisdiction and venue are very different matters; one concerns the right and power of a court to adjudicate a matter, while the other simply involves the place of the suit."); *Sorrells v. Sorrells*, 247 Ga. 9, 11 (2) (274 SE2d 314) (1981) (considering whether allowing petitions for guardianship of adult state residents to be filed in a county where the ward was "found," as opposed to the ward's domicile, ran afoul of the venue provisions of the 1973 state constitution); *Smith v. Young*, 187 Ga. App. 191, 192 (1) (369 SE2d 798) (1988). We therefore hold

---

[6] These Code sections allow, among other things, filing a petition in a county where a "proposed ward" is "found." OCGA §§ 29-4-10 (a) (2) & 29-5-10 (a) (2).

that to the extent the probate court concluded that it had jurisdiction because Kevin was "found" in Georgia, it plainly erred.

(b) Babbitt contends the probate court erred in concluding that it had jurisdiction of the Hansons' petition for permanent orders under the UAGCPJA. We agree.

Article 2 of the UAGCPJA creates a three-tiered approach to jurisdictional issues between states, and under that approach, "the state court that may have jurisdiction would be, in order of priority: 1) the court in the respondent's home state; 2) the court of a state with which the respondent has a significant connection; or 3) a third state that is neither the home state nor a significant-connection state." Radford, Ga. Guardianship and Conservatorship § 4:3 (2019). These tiers are established in four subsections of OCGA § 29-11-12, which specify several circumstances under which "[a] court of this state has jurisdiction to appoint a guardian or issue a conservatorship order for a respondent."[7] OCGA § 29-11-12. Subsection (1) of OCGA § 29-11-12 is clearly inapplicable because it grants jurisdiction to a court in

---

[7] A "respondent" is defined as "an adult for whom a conservatorship order or the appointment of a guardian is sought. . . ." OCGA § 29-11-2 (12).

8

the respondent's home state, and it is undisputed that Kevin's home state was Florida. The trial court did not rely on Subsection (3).

Rather, on remand following Babbitt's earlier appeal, the probate court held that it had jurisdiction because Georgia was a significant-connection state for Kevin as provided in Subsections (2) (A) and (2) (B). As explained below, pretermitting whether Georgia could be deemed a significant-connection state under these subsections, the record does not show that the other express requirements of Subsection (2) were met.

(i) Subsection (2) (A) provides for jurisdiction if "*[o]n the date the petition is filed*," the forum state "is a significant connection state"[8] *and* "[t]he respondent does not have a home state or a court of the respondent's home state has declined to exercise jurisdiction because this state is a more appropriate forum." (Emphasis supplied.) OCGA § 29-11-12 (2) (A).

---

[8] A "significant connection state" is defined as "a state, other than the home state, with which a respondent has a significant connection other than mere physical presence and in which substantial evidence concerning the respondent is available." OCGA § 29-11-2 (13). "In determining. . . whether a respondent has a significant connection with a particular state, the court shall consider" five specified factors. OCGA § 29-11-10.

9

The probate court plainly erred by relying on this subsection because it is undisputed that Florida was Kevin's home state and there is no evidence in the record that as of July 3, 2018, the date of the petition for permanent orders, a court in Florida had declined to exercise jurisdiction because Georgia was a more appropriate forum. Rather, the record shows that Babbitt filed a petition in Hillsborough County, Florida seeking guardianship over Kevin in late August 2018 and filed a proceeding in Sarosota County after Kevin returned to Florida in October 2018. Thus, neither case could have been dismissed before the Hansons filed their petition in Georgia seeking permanent orders. And even though it appears that each of the two Florida actions ultimately was dismissed, there is no indication that either court dismissed the action specifically because it determined that Georgia was "a more appropriate forum" as required by OCGA § 29-11-12 (2) (A); see also OCGA § 29-11-18 (2). For these reasons, the probate court plainly erred by relying on OCGA § 29-11-12 (2) (A) to justify its jurisdiction.

(ii) Subsection (2) (B) provides for jurisdiction if "[o]n the date the petition is filed," the forum state "is a significant connection state" and "[t]he respondent has a home state, a petition for an appointment or order is not pending in a court of that

10

state or another significant-connection state, and, *before the court makes the appointment or issues the order*":

> (i) A petition for an appointment or order is not filed in the respondent's home state; (ii) An objection to the court's jurisdiction is not filed by a person required to be notified of the proceeding; and (iii) The court in this state concludes that it is an appropriate forum under the factors set forth in Code Section 29-11-15[.]

(Emphasis supplied.) OCGA § 29-11-12 (2) (B). These final three requirements are stated in the conjunctive, meaning that all three must be true to satisfy this subsection. See *Adams v. Atlanta Faith Memorial Church*, 191 Ga. App. 215, 216 (381 SE2d 397) (1989).

Yet there is no evidence in the record that satisfies the first and second of the final three requirements: As shown above, Babbitt did file a petition in Florida before the Georgia probate court issued the orders currently on appeal. And, as explained below, an objection to the probate court's jurisdiction was filed by a person required to be notified of the proceeding, in this case, Babbitt as the guardian of Kevin's minor children.

Kevin's minor children filed multiple objections to the probate court's jurisdiction before that court entered an order granting the Hansons a permanent

guardianship and permanent conservatorship. For example, Babbitt and the children moved to dismiss the Hansons' petition for permanent orders arguing, in part, that under the UAGCPJA, the dispute belonged in Florida.

The Hansons argued, however, that Babbitt's objections were insufficient because they were not filed by "a person required to be notified of the proceeding" as required by OCGA § 29-11-12 (2) (B) (ii). The probate court agreed, relying on OCGA §§ 29-4-10 (b) (7) & 29-5-10 (b) (7) to conclude Babbitt and the children were not required to be notified. Accordingly, the court held that no objection had been filed by anyone required to receive notice of the permanency proceedings. In these conclusions, the probate court plainly erred.

Under Article 2 of the UAGCPJA — the "exclusive jurisdictional basis" for the type of order entered in this case, see OCGA § 29-11-11 — notice is governed by OCGA § 29-11-17. OCGA § 29-11-17 provides that notice in the present case must conform with the notice requirements of both Georgia and Florida law:

> If a petition for the appointment of a guardian or issuance of a conservatorship order is brought in this state and this state was not the respondent's home state on the date the petition was filed, in addition to complying with the notice requirements of this state, notice of the petition must be given to those persons that would be entitled to notice of the petition if a proceeding were brought in the respondent's home

12

state. The notice must be given in the same manner as notice is required to be given in this state.

OCGA § 29-11-17 (a).

Florida guardianship law is found in chapter 744 of the Florida statutes.[9] Under that law, Kevin's minor children were required to be notified of the Hansons' petition for a permanent guardianship and conservatorship through Babbitt, their guardian.[10] And, as shown above, the children objected to the Georgia probate court's jurisdiction over that proceeding. It follows that there is no evidence that the second of the final

---

[9] Florida is one of four states that has not adopted a version of the Uniform Act. See https://www.uniformlaws.org. But nothing in the text of the Georgia version provides that any of its provisions relevant to the present case do not apply when the home state of the respondent is a state that has not adopted a version of the Uniform Act. Rather, the UAGCPJA only provides the admonition that "[i]n applying and construing this chapter, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." OCGA § 29-11-40.

[10] "Notice of the filing of a petition to determine incapacity and a petition for the appointment of a guardian. . . must be . . . served upon all next of kin identified in the petition." Fla. Stat. Ann. § 744.331 (1). "Every petition for the appointment of a guardian shall be verified by the petitioner and shall contain statements, to the best of petitioner's knowledge and belief, showing . . . the names and addresses of the next of kin of the alleged incapacitated person or minor[.]" Fla. Stat. Ann. § 744.334 (1). "'Next of kin' means those persons who would be heirs at law of the ward or alleged incapacitated person if the person were deceased and includes the lineal descendants of the ward or alleged incapacitated person." Fla. Stat. Ann. § 744.102 (14). And minors must be notified through their legal guardian. Fla. Stat. Ann. § 48.041 (1) (a).

three requirements to establish jurisdiction under OCGA § 29-11-12 (2) (B) was shown. Accordingly, the probate court plainly erred by concluding that it had jurisdiction under Subsection (2) (B) of OCGA § 29-11-12.

In sum, we hold that the probate court plainly erred in concluding that it had jurisdiction to order a permanent guardianship and conservatorship regarding Kevin and his property not located in Georgia.[11] See generally *Guardianship of Sanders*, 143 A3d 795, 799-800 (ME 2016) (finding that a Maine probate court lacked jurisdiction to order a nontemporary guardianship for failure to meet the specific requirements of Maine's version of the Uniform Act). We therefore reverse the probate court's final order granting a permanent guardianship over Kevin and conservatorship over Kevin's property not located in Georgia.

3. Babbitt also contends that the trial court erred by appointing a guardian for a term that exceeds 90 days and ordering a conservatorship regarding property not located in Georgia. She argues that the only type of jurisdiction available under the

---

[11] Based on our holding that OCGA § 29-11-12 (2) does not provide a basis for the probate court's jurisdiction in this case, we need not address whether the court erred in concluding that Georgia was a "significant connection" state as a part of that analysis.

14

circumstances was limited "special jurisdiction" as provided in the UAGCPJA. We agree.

Subsection (4) of OCGA § 29-11-12 provides that a Georgia court may obtain jurisdiction if "[t]he requirements for special jurisdiction under Code Section 29-11-13 are met." OCGA § 29-11-13 (a) provides that a court of this state lacking jurisdiction under Subsections (1) through (3) of § 29-11-12 has limited special jurisdiction to:

> (1) Appoint a guardian in an emergency for a term not exceeding 90 days for a respondent who is physically present in this state; (2) Issue a conservatorship order with respect to real or tangible personal property located in this state; or (3) Appoint a guardian or conservator for an incapacitated person or protected person for whom a provisional order to transfer the proceeding from another state has been issued under procedures similar to Code Section 29-11-20.

OCGA § 29-11-13 (a). This Code section provided the probate court with jurisdiction under the difficult situation presented by the facts in the case. But, based on the plain language of this statute, the probate court was limited to appointing a guardian for a term not exceeding 90 days and to ordering a conservatorship regarding property

15

located only in this state. The probate court plainly erred by exceeding these limitations.[12]

On remand, the probate court is instructed to enter a final emergency order extending the Hansons' powers for 30 days following entry of the remittitur.

*Judgment reversed and remanded with direction. Dillard, P. J., and Brown, J., concur.*

---

[12] Based on our decision above, we need not reach Babbitt's remaining enumerations of error.